**United States District Court**
For the Northern District of California

1
2
3
4
5                                   **NOT FOR CITATION**

6                         UNITED STATES DISTRICT COURT

7                         NORTHERN DISTRICT OF CALIFORNIA

8
9
10
SHAUNE PATTERSON,
11
             Plaintiff,                          No. C 04-0405 PJH
12
      v.                                         **ORDER GRANTING MOTIONS FOR**
13                                               **SUMMARY JUDGMENT AND GRANTING**
APPLE COMPUTER, INC., et al.,                    **MOTION FOR SANCTIONS**
14
             Defendants.
15 _____/

16          Defendants' motions for summary judgment and motion for sanctions came on for

17   hearing before this court on July 20, 2005.  Plaintiff appeared by her counsel Rachel Orejana,

18   and defendants appeared by their counsel Lynne Hermle.  Having read the parties' papers

19   and carefully considered their arguments and the relevant legal authority, and good cause

20   appearing, the court hereby GRANTS the motions as follows.

21                                   **INTRODUCTION**

22          This is an employment discrimination case.  Plaintiff Shaune Patterson is an African-

23   American lesbian who was formerly employed by defendant Apple Computer, Inc. ("Apple").

24   Also named as defendants are Apple employees Dan Walker ("Walker"), Sheri Parker

25   ("Parker"), and Steve Burmeister ("Burmeister").

26          Plaintiff asserts 14 causes of action in the fifth amended complaint ("5thAC") – racial

27   discrimination under 42 U.S.C. § 1981, against Apple; racial discrimination in violation of Title

28   VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et seq. ("Title VII"), against Apple; racial

discrimination, in violation of the Fair Employment and Housing Act ("FEHA"), California Government Code § 12900, et seq., against Apple; violation of the California Equal Pay Act, California Labor Code § 1197.5, against Apple; harassment, in violation of FEHA, against Apple, Walker, and Parker; retaliation, in violation of FEHA, against Apple, Walker, Parker, and Burmeister; failure to take reasonable steps to prevent discrimination from occurring, in violation of FEHA, against Apple; failure to maintain environment free from harassment, in violation of FEHA, against Apple; defamation (slander), against Apple, Walker, and Parker; defamation (libel), against Apple, Walker, and Parker; invasion of privacy, against Apple, Walker, and Parker; wrongful termination in violation of public policy, against Apple; sexual orientation discrimination, in violation of FEHA, against Apple; and genetic characteristic discrimination, in violation of FEHA, against Apple.

The four defendants now move for summary judgment as to all claims asserted against them.  Plaintiff opposes the motions as to all claims, with the exception of the fourth cause of action for violation of the Equal Pay Act, which she concedes.  Apple and Walker also move for sanctions pursuant to Federal Rule of Civil Procedure 11, arguing that the claims alleged against Walker are unwarranted by law and unsupported by any facts.

## BACKGROUND

In 1996, plaintiff's brother Byron Patterson, a long-time friend of defendant Steve Burmeister, asked Burmeister to interview plaintiff for a position at Burmeister's then-employer, PacifiCare.  Burmeister interviewed and hired plaintiff, at an annual salary of $37,000.  Burmeister and plaintiff worked well together at PacifiCare, and Burmeister gave her a salary increase.  According to plaintiff, she and Burmeister shared interests and background, and discussed many personal issues.  Burmeister also socialized with plaintiff's family.  Burmeister is gay, and he knew plaintiff was a lesbian before he hired her.  Burmeister subsequently left PacifiCare for Rand, where he again recruited and hired plaintiff, at an annual salary of $55,000.

Plaintiff eventually left Rand, because she had determined to become an options trader.  However, she remained in contact with Burmeister.  When she told him her trading

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

career was not a success, Burmeister told her there might be an opening at Apple, where he was then working. Plaintiff applied for a position, giving Burmeister as a reference. She flew in from Southern California for the interview, and Burmeister picked her up at the airport and drove her to the interview. In May 2001, Apple hired plaintiff as a Compensation Consultant in the Human Resources ("HR") Compensation Group, at a starting salary of $88,000. According to Burmeister, he pushed for her salary to be larger than initially planned because he was aware that a salary freeze made it difficult to get pay increases at Apple.

As a Compensation Consultant, plaintiff was expected to provide different types of employee compensation support services and information to various Apple clients. Compensation employees worked frequently with colleagues from a variety of Apple organizations, and were required to have good interpersonal and communication skills.

In February 2002, plaintiff's first supervisor at Apple, Karen Kaufman ("Kaufman"), rated plaintiff as a "solid contributor," which is in the middle rank of Apple's performance evaluations. Kaufman noted that plaintiff had a number of interpersonal difficulties – she needed to work on being more communicative, to participate more in team meetings, and to be more forthcoming with her knowledge. Kaufman also noted comments by plaintiff's colleagues that plaintiff was not flexible or willing to jump in when others needed help.

In November 2002, Burmeister became plaintiff's supervisor. According to Burmeister, plaintiff continued to discuss her personal issues with him, including her sexual orientation, weight problems, and medical issues. According to plaintiff, she experienced a lessening of the stress she had felt under prior supervisors.

Burmeister offered plaintiff an opportunity to support the Apple Hardware Engineering organization, believing that this opportunity would give her a chance to showcase her skills and build a base of support for her clients. Plaintiff was expected to provide support through market comparisons, to respond to questions about compensation, to complete bonus presentations, and to attend staff meetings. This assignment was not successful. Plaintiff's engineering clients, including Cheryl Smith ("Smith"), an African-American HR Senior Director, found plaintiff to be unresponsive, unhelpful, and rude. Smith believed plaintiff had minimal

United States District Court

For the Northern District of California

1   interpersonal skills.  According to Smith, plaintiff frequently responded, "No," or "That's not my

2   job," when Smith sought her assistance.  Plaintiff was also resistant to providing data on

3   bonuses, stating that the task was hard.  Smith received complaints from her HR team about

4   plaintiff's attitude and refusal to perform work.  These problems caused Smith ultimately to

5   limit her interaction with Smith, and to seek intervention from Burmeister.

6        Judy Goodson ("Goodson"), another African-American HR Director, found plaintiff to be

7   often unavailable, rude, disrespectful, and negative.  To create an opportunity for plaintiff,

8   Goodson invited her to make a presentation to a Senior Vice President and his staff.

9   However, plaintiff declined.  Plaintiff also refused to attend Goodson's staff meetings, despite

10  frequent requests from Goodson that she attend.  Goodson informed Burmeister of these

11  problems.  Despite plaintiff's flaws, Burmeister states that he did not want to terminate her.

12  Instead, he moved her back to her prior compensation duties, which involved mainly analysis

13  and infrequent personal interaction.

14       According to plaintiff's colleague Deborah House ("House"), plaintiff was frequently

15  absent from department staff meetings and quarterly HR Department meetings.  According to

16  Burmeister, plaintiff was rude to her colleagues in the Compensation Group, prompting

17  Burmeister to counsel her repeatedly about her inappropriate tone, demeanor, and ability to

18  work with others and be a team player.

19       Plaintiff's work day was also interrupted by ongoing personal appointments and

20  activities.  She maintained a standing weekly hair appointment during working hours.  Starting

21  in February 2002, she commenced weekly sessions with a psychologist whose office was in

22  Oakland, approximately 60 miles from Apple's Cupertino offices.  She also spent up to and

23  hour and a half a day trading her personal stock portfolio, and at other times played video

24  games and did crossword puzzles on her computer.

25       Plaintiff believed she was entitled to yearly merit increases and promotions.  However,

26  Apple had a salary freeze in effect from the time plaintiff was hired until late 2003.  Thus, the

27  first opportunity for plaintiff to receive a merit increase was in connection with the review cycle

28  in November 2003.  When plaintiff learned that she was not receiving a merit increase, she

**United States District Court**
For the Northern District of California

1  accessed two Apple databases during work hours to obtain confidential salary and tenure

2  information regarding certain of her colleagues.

3      On November 12, 2003, plaintiff sent an e-mail to defendant Dan Walker, Apple's

4  Chief Talent Officer, requesting that he provide her with a promotion and/or merit increase

5  ("the November 12th e-mail").  The e-mail contained the confidential salary and tenure

6  information that plaintiff had accessed from the Apple databases, and she copied the e-mail

7  (or the information) to her brother, her psychologist, and an attorney she had consulted (but not

8  retained).  She did not block out any of the confidential information, such as her colleagues'

9  names and salaries before sending the e-mail.

10     Plaintiff subsequently testified in her deposition that the November 12th e-mail was <u>not</u>

11  a complaint of discrimination, and that she was not implying that she intended to make a claim

12  or initiate a lawsuit.  Nevertheless, upon Walker's receipt of the e-mail, Apple became

13  concerned about plaintiff's possible misuse of the information.

14     According to Walker and Burmeister, plaintiff's November 12th e-mail generated

15  concern at Apple because it was apparent that plaintiff had accessed salary and other

16  confidential information regarding her manager and co-workers, and that this information had

17  been accessed for personal purposes, not business purposes.  It also appeared that plaintiff

18  had disclosed the confidential information to third parties.  Plaintiff was permitted to use her

19  personal laptop computer for business purposes, and, as a result, her laptop contained an

20  extensive compilation of confidential Apple employee information.  Thus, Apple became

21  concerned about plaintiff's possible misuse of this confidential information.  This concern was

22  heightened when Burmeister entered plaintiff's work area on November 12 to retrieve some

23  documents, and discovered that plaintiff had left sensitive employee data unsecured on a

24  table in her office next to what appeared to be a list of non-Apple personnel.

25     Walker asked defendant Sheri Parker, Apple's Director of Employee Relations, to

26  investigate the e-mail and make an appropriate response.  This was consistent with Parker's

27  job duties and responsibilities.  Parker then met with Burmeister and discussed the possibility

28  of suspending plaintiff during the investigation, as was common in such situations.  Burmeister

United States District Court

For the Northern District of California

1   shared with Parker his concerns about how plaintiff might respond to such a suspension,

2   telling her that Patterson had told him she had "guns," and had also stated on more than one

3   occasions that if she was ever walked out of the company she would go out in a "blaze of

4   glory."  Parker was concerned, and telephoned David Hull ("Hull"), then an Apple Security

5   Manager, to assess security concerns.

6        During that call, Parker and Hull asked Burmeister to share with them what he knew

7   about plaintiff, including information about plaintiff's family and personal situation, so they

8   could determine whether plaintiff might be a danger to herself or others.  In response,

9   Burmeister discussed how plaintiff might react to being informed that she was being

10  suspended, and answered questions about plaintiff's state of mind.  He mentioned that plaintiff

11  was unhappy for several reasons, and had been taking anti-depressant medication.  When

12  asked, Burmeister provided a physical description of plaintiff, stating that she was Black and

13  obese.  He also said that she was a lesbian.  According to Parker, this information about

14  plaintiff was not shared with anyone other than Parker or Hull.

15       Subsequently, as part of the investigation, plaintiff met with Parker and Hull.  Plaintiff

16  confirmed that she had accessed and reviewed her manager's and co-workers' salaries and

17  confidential information independent of any business reason.  She considered it appropriate

18  to access the information, and admitted that she had distributed the information to her attorney

19  and therapist.  She also confirmed that she had chosen to use a personal laptop for her work

20  at Apple, and therefore possessed confidential Apple information on that laptop.  At the

21  conclusion of the meeting, Parker told plaintiff she was suspended with pay pending the

22  outcome of the investigation.[1]  Parker asked plaintiff whether Apple could inspect her laptop,

23  and plaintiff consented.

24       On November 18, 2003, plaintiff filed a charge of discrimination with the EEOC

25  (charge No. 377-2004-00145), alleging discrimination on the basis of race, and retaliation for

26  engaging in protected activities.  She claimed that Walker had suspended her.  She

27  _____

28       [1] While plaintiff was suspended, her building access and network password were disabled
     for security purposes, as was standard in such situations.

1   requested immediate closure, and on November 20, 2003, the EEOC issued plaintiff a right-

2   to-sue letter

3        Apple hired independent investigator Rebecca Speer ("Speer") to investigate the

4   compensation and promotion issues plaintiff had raised.  Speer is an attorney who consults

5   with companies about employment-related issues.  In her initial interview with Speer, plaintiff

6   complained that the failure to promote her or increase her salary was inequitable because she

7   believed it "didn't make sense" for her not to receive a raise or promotion.  She reiterated the

8   position she had taken in the November 12th e-mail, which was that she could think of no

9   rational reason for her not to receive a promotion, in view of the fact that her responsibilities

10  had grown and that three different managers had promised her she would receive a

11  promotion.  She then told Speer that the only difference between her and those who had

12  received promotions was "race."  In addition to interviewing plaintiff, Speer also interviewed

13  Walker, Burmeister, Kaufman, Valerie Williams ("Williams" – a former Compensation

14  Director), Smith, Goodson, and Denise Young Smith (a former Director of Employee

15  Relations).

16       In the course of the ongoing internal Apple investigation, Parker met with Burmeister

17  and several Compensation Group employees regarding department policy.  She did not

18  reveal to them (except possibly Burmeister) that she was investigating plaintiff's conduct.

19  According to Parker, her investigation revealed that employees in the Compensation Group

20  understood that it was not appropriate for them to access the confidential salary information of

21  co-workers for non-business-related purposes (although  there was apparently no explicit

22  written policy in effect).  Parker concluded that plaintiff's conduct had been improper and that

23  she had exhibited poor judgment.  Nevertheless, she says she gave plaintiff the benefit of the

24  doubt, and recommended that she not be disciplined.  Burmeister accepted this

25  recommendation and did not discipline plaintiff, and plaintiff returned to work after four weeks

26  of (paid) suspension.

27       Speer sent a copy of the report of her investigation to Apple on January 8, 2004.  The

28  report reflects that plaintiff's claim that "three different managers" had promised her a

7

promotion was not accurate.  The report indicates that in July or August 2001 (i.e., two or three months after plaintiff was hired at Apple), Williams and Kaufman had asked plaintiff to assume responsibility for additional client groups, prompting plaintiff to ask how that would affect her salary and title.  According to plaintiff, both said in independent conversations, "We'll see."

Speer's report further reflects that in May 2002, plaintiff again approached Williams to ask about a promotion, and Williams told her salaries were frozen and that she would review her compensation and title at the next review cycle (November 2003).  In January or February 2003, however, Apple announced that a merit review would take place in March 2003.  Plaintiff again raised the subject of a raise with Burmeister.  According to Speer's report, plaintiff claimed that Burmeister told her the merit review would take place in November, and at that time, both she and House would receive promotions and raises.  However, in his deposition, Burmeister subsequently vehemently denied having told plaintiff that either she or House would receive a raise in November 2003.  Burmeister also denied plaintiff's description of her job duties (as claimed in the November 12th e-mail).

Speer reported that Burmeister had explained that he had not granted plaintiff a raise in November 2003 because plaintiff was rated "solid contributor," not "significant contributor" or higher; and because plaintiff was already fairly compensated, as she had come in at a high level.  Burmeister stated that Walker's organization (the HR-related groups) had received only a small pool of funds for merit increases, and that Walker had told Burmeister to limit raises and/or promotions to those who had made a "significant" contribution.

Speer concluded that there was no merit to plaintiff's claim that she had been unfairly denied a salary increase and promotion.  Speer looked at the other employees mentioned in plaintiff's e-mail, and found that Burmeister had applied the same criteria to those as to plaintiff.  Only House had received an increase, because of her superior performance and because of her extraordinary level of responsibility.  Speer also looked at the employees that plaintiff had pointed out as earning more money than she did, and set forth Burmeister's reasons for paying those employees at a higher rate.

Plaintiff returned to work in late December 2003 or early January 2004.  On January 8,

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1  2004, she sent another e-mail to Walker, complaining of retaliation for having "fil[ed] a

2  complaint of racial discrimination."  She copied the e-mail to Burmeister, Fred Anderson

3  (Apple's then-CFO), and her attorney, Waukeen McCoy.  In the e-mail, plaintiff complained

4  that her suspension and Parker's investigation were retaliatory, and that Parker's investigation

5  also invaded her privacy and set her up for "public censure" as it involved a search of her

6  office, a confiscation of her personal laptop, interviews with her peers, harassing questions by

7  Parker, and an attempt to "freeze" out her attorney.

8  Plaintiff also asserted that certain written guidelines that had been distributed at a

9  December 15, 2003, HR staff meeting – regarding access by HR employees to confidential

10  employee information – implicitly communicated to co-workers that plaintiff had done

11  something wrong.  Finally, she claimed that Walker and Parker had cut her responsibilities to

12  10% of the duties she had before her suspension, and denied her access to information she

13  needed for her work.  Apple again retained Speer to investigate plaintiff's allegations.

14  On January 28, 2004, plaintiff filed a three charges of discrimination with DFEH.  In the

15  first, E200304-G-0644-00cr, plaintiff alleged that she had been harassed, denied a

16  promotion, denied equal pay, and retaliated against by Walker, because of her race.  The

17  same day, DFEH provided plaintiff with a notice of case closure and right-to-sue letter.

18  In the second charge, E200304-G-0644-01rc, plaintiff alleged that she had been

19  harassed, denied a promotion, denied equal pay, and suspended from work on November 13,

20  2003, by Walker, because of her race.  The same day, DFEH provided plaintiff with a notice

21  of case closure and right-to-sue letter

22  In the third charge, E200304-G-0644-02rc, plaintiff alleged that she had been

23  harassed, denied a promotion, denied equal pay, and suspended from work by Walker and

24  Parker, because of her race.  The same day, DFEH provided plaintiff with a notice of case

25  closure and right-to-sue letter.  Plaintiff filed the present action on January 29, 2004.

26  On February 9, 2004, Speer sent Apple the report of her second investigation.   Speer

27  found that the concerns stemming from plaintiff's handling of confidential employee

28  information – and not a desire to retaliate against her – led to the decision to suspend her and

United States District Court

For the Northern District of California

conduct an investigation.  Speer concluded that none of plaintiff's allegations had merit.

In early 2004, Walker told Burmeister and other managers within HR that they had to cut several hundred thousand dollars from their budgets.  Consequently, Burmeister made the decision to lay off three of the seven employees who reported to him.  Plaintiff was laid off on March 5, 2004, along with two other employees who had worked at Apple longer than plaintiff had.  When plaintiff was laid off, her duties were reassigned to her remaining colleagues in the Compensation Group.  No one was hired to replace her.  Moreover, when another Compensation Group employee left the group about a month later, that position was not filled.  Like her colleagues, plaintiff was offered two months' pay as severance.  Neither Walker nor Parker were involved in the decision to lay off plaintiff.

On November 10, 2004, plaintiff filed an amended administrative charge, E200304-G-0644-00cr, to amend the three charges that had originally been filed on January 28, 2004.  In the amended charged, she alleged that Steve Burmeister had discriminated against her on the basis of sexual orientation and genetic characteristic, when he laid her off on March 5, 2004.

## MOTIONS FOR SUMMARY JUDGMENT

A.     Legal Standard

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Material facts are those that might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  The court may not weigh the evidence, and is required to view the evidence in the light most favorable to the nonmoving party.  Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at

**United States District Court**
For the Northern District of California

1  trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for

2  the moving party.  On an issue where the nonmoving party will bear the burden of proof at trial,

3  the moving party can prevail merely by pointing out to the district court that there is an absence

4  of evidence to support the nonmoving party's case.  Id.

5        Once the moving party meets its initial burden, the nonmoving party must go beyond the

6  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is

7  a genuine issue for trial."  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.  "To show the

8  existence of a 'genuine' issue, . . . [a plaintiff] must produce at least some significant probative

9  evidence tending to support the complaint."  Smolen v. Deloitte, Haskins & Sells, 921 F.2d

10  959, 963 (9th Cir. 1990) (quotations omitted).  The court must view the evidence in the light

11  most favorable to the non-moving party.  United States v. City of Tacoma, 332 F.3d 574, 578

12  (9th Cir. 2003).  The court must not weigh the evidence or determine the truth of the matter, but

13  only determine whether there is a genuine issue for trial.  Balint v. Carson City, 180 F.3d 1047,

14  1054 (9th Cir. 1999).

15        Deference to the non-moving party has some limits.  Thus, a plaintiff cannot rest on the

16  allegations in her pleadings to overcome a motion for summary judgment.  Brinson v. Linda

17  Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995); Ghebreselassie v. Coleman Sec.

18  Serv., 829 F.2d 892, 898 (9th Cir. 1987).  Self-serving affidavits will not establish a genuine

19  issue of material fact if they fail to state facts based on personal knowledge or are too

20  conclusory.  Rodriquez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001).

21        Regardless of whether plaintiff or defendant is the moving party, each party must

22  "establish the existence of the elements essential to [its] case, and on which [it] will bear the

23  burden of proof at trial."  Celotex, 477 U.S. at 322.

24  B.     Defendants' Motions for Summary Judgment

25        The four defendants – Apple, Walker, Parker, and Burmeister – seek summary

26  judgment on all causes of action asserted against them.

27        1.    Racial discrimination

28        In the first, second, and third causes of action, plaintiff alleges claims of racial

**United States District Court**

For the Northern District of California

discrimination against Apple under 42 U.S.C. § 1981, Title VII, and FEHA, asserting that she was denied a promotion and a salary increase because of her race.  Title VII and FEHA claims are analyzed under the same legal theory.  See Brooks v. City of San Mateo, 229 F.3d 917, 923 & n.3 (9th Cir. 2000).  Claims of employment discrimination under § 1981 require the same elements of proof as Title VII cases.  Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985); see also Maduka v. Sunrise Hosp., 375 F.3d 909, 912 (9th Cir. 2004) (same analysis applies to Title VII and § 1981 discrimination claims).

In a disparate treatment case, the plaintiff must show that intentional discrimination was the determinative factor in the adverse employment action.  Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).  There are two ways of proving intentional discrimination – 1) direct evidence and 2) indirect or circumstantial evidence, invoking the McDonnell-Douglas analysis.

Direct evidence is evidence that proves the fact of discriminatory animus without inference or presumption.  Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998).  In most cases, however, there is no direct evidence of discrimination by the employer, and discrimination claims must be proved indirectly (circumstantially).  In such cases, discrimination claims are analyzed under an allocation of burdens of production and proof, based on the model set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under the McDonnell-Douglas framework, the burden of production first falls on the plaintiff to make out a prima facie case of discrimination. She may do so by showing that (1) she belongs to a protected class, (2) she was qualified for the position she held (or for the position to which she wished to be promoted and for which she applied), (3) she was terminated or demoted from (or denied a promotion to) that position, and (4) the job went to someone outside the protected class.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004).

The burden of production then shifts to the employer, who must present evidence sufficient to permit the factfinder to conclude that the employer had a legitimate, nondiscriminatory reason for the adverse employment action.  St. Mary's Honor Center, 509 U.S. at 506-07.  If the employer does so, the plaintiff must demonstrate that the employer's

**United States District Court**
For the Northern District of California

1    articulated reason is a pretext for unlawful discrimination by either directly persuading the

2    court that a discriminatory reason more likely motivated the employer or indirectly by showing

3    that the employer's proffered reason is unworthy of credence.  Texas Dep't of Community

4    Affairs v. Burdine, 450 U.S. 248, 256 (1981); see also Aragon v. Republic Silver State

5    Disposal, Inc., 292 F.3d 654, 658-59 (2002) (en banc).

6         Here, Apple seeks summary judgment on the claims of racial discrimination, arguing

7    that plaintiff cannot establish either a prima facie case or pretext, on either the claim of failure

8    to promote or the claim of failure to increase plaintiff's salary.  Apple first argues that plaintiff

9    cannot establish a prima facie case of failure to promote because she cannot show that she

10   applied for a specific promotion, that she was qualified for the Senior Compensation Analyst

11   position to which she claims she wished to be promoted, or that she applied for but did not

12   receive the promotion in question.  In addition, Apple asserts that because plaintiff fails to

13   show that she was more qualified than House, the only person that Burmeister promoted, she

14   cannot establish a prima facie case.

15        In response, plaintiff asserts that she has established a prima facie case because she

16   has shown that she is a member of a protected class who performed competently.  She

17   argues that has met her "competence burden" by showing that she received a rating of "solid

18   contributor."  She also notes that Burmeister indicated that she was "smart," and hired or

19   recommended that she be hired into two positions after he had worked with her at PacifiCare.

20   She argues that she is not required to show that she formally applied for a promotion because

21   it was not the practice at Apple to list available positions.  For example, she claims that when

22   Burmeister needed to fill a position, he interviewed candidates who had "expressed an

23   interest" in the position.  She also asserts that House did not actually apply for the promotion

24   that she received from Burmeister.  She claims that it was common for Apple employees to

25   take on additional responsibilities prior to being given a promotion, and argues that she

26   herself had the right to expect promotion based on the fact that she took on extra

27   responsibilities.

28        Apple contends that even if plaintiff has made a minimally sufficient showing of the

13

United States District Court
For the Northern District of California

prima facie case, Apple's failure to promote her was based on legitimate, nondiscriminatory reasons that had nothing to do with plaintiff's race – specifically, that plaintiff was not qualified for the Senior Compensation Analyst position and had significant communication and leadership issues that precluded promotion.  Burmeister, who was aware of plaintiff's race, hired or recommended her for three jobs in which she worked directly under him; evaluated her performance as satisfactory over time, granting her substantial salary increases at jobs prior to her employment at Apple; and had a long-term social relationship with her and her family.

Plaintiff responds that Apple's articulated explanation is pretextual.  She asserts that the fact that there was only one African-American Compensation Consultant in her work group is evidence of pretext, as is the fact that Burmeister made racially disparaging comments.

Apple also argues that plaintiff cannot show that she was more deserving of a raise than Deborah House, the only employee in the Compensation Group who did receive a raise. Apple contends that although plaintiff may have believed she deserved a raise, the evidence shows that she did not meet the criteria for analyst skills, teamwork, communication skills, or responsiveness, as demonstrated by the criticism in her performance review and in the complaints of her co-workers.  Burmeister, who made the recommendation that House receive a raise in November 2003 and that plaintiff not receive a raise, stated that House's performance was exceptional while plaintiff was ranked only "solid performer."

In response, plaintiff does not address Apple's arguments regarding her qualifications. She reiterates that there was only one African-American Compensation Consultant it her group at Apple.  She also claims that her non-African-American counterparts were paid more than she was, despite her "more extensive education" and experience.

In reply, Apple notes that plaintiff has failed to address any of Apple's arguments with regard to the claim of failure to increase salary because of race.  Specifically, Apple contends that plaintiff does not respond to the argument that she was not more qualified for a raise than Deborah House, the only employee in the Compensation Group who did receive a raise. Apple asserts that plaintiff also fails to provide competent evidence showing that House was

performing comparable work to the work plaintiff was doing.

Apple also argues that plaintiff did not receive a salary increase for legitimate non-discriminatory reasons.  Apple provides evidence showing that it had a salary freeze in effect until November 2003, at which time plaintiff did not meet the standard for a pay increase because she had received only a "solid" on her performance review and had significant communication and leadership issues.  Apple contends that the salaries of other employees in the Compensation Group are irrelevant to plaintiff's claim that she did not receive a pay raise on one particular occasion.  Apple also asserts that the fact that Burmeister hired plaintiff into several different jobs, over the years, with ever-increasing salaries, dispels any suggestion that he harbored discriminatory animus toward her on account of her race.  And as with the claim of failure to promote, the fact that plaintiff was the only African-American in the group is irrelevant, or, at most, suggest non-discrimination, as five of the six employees who did not receive raises were non-African-Americans.

The court finds that plaintiff has not provided sufficient evidence to show that Apple's explanation regarding the failure to promote her or the failure to increase her salary  was pretextual.  A plaintiff may meet the burden of showing pretext by using either direct or circumstantial evidence.  See Burdine, 450 U.S. at 256.  Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer. Coghlan v. American Seafoods Co. LLC, 413 F.3d 1090, 1095 (9th Cir. 2005).  Because direct evidence is so probative, the plaintiff need offer "very little" direct evidence to raise a triable issue sufficient to defeat summary judgment.  Id.

Circumstantial evidence is evidence that requires an additional inferential step.  It can take two forms.  See id.  The plaintiff can make an affirmative case that the employer is biased, based, for example, on statistical evidence that points to bias.  Aragon, 292 F.3d at 663.  Alternatively, the plaintiff can provide evidence that shows that the employer's proffered explanation for the adverse action is "unworthy of credence." Burdine, 450 U.S. at 256.  When a plaintiff relies on circumstantial evidence – or evidence that negatively discredits the employer's stated rationale – that evidence must be "specific and substantial" in order to

United States District Court

For the Northern District of California

1   defeat a motion for summary judgment.  Coghlan, 413 F.3d at 1095; see also Stegall v.

2   Citadel Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2004).

3          Here, plaintiff attempts to make her case with both direct and circumstantial evidence.

4   As direct evidence, she provides a declaration in which she states that Burmeister made

5   racially derogatory comments.  However, she was able to recall only three such comments by

6   Burmeister over all the years that she had known him – the statement that African-Americans

7   "couldn't have a house party without shooting up the neighborhood;" the statement that

8   African-Americans are somehow involved in "shooting up the screens at movie theaters;" and

9   the statement that "every time we [presumably referring to African-Americans] were

10  interviewed on television they always seemed to get the person who's in curlers, missing

11  teeth."  These stray remarks are not evidence of discrimination.  Horn v. Cushman &

12  Wakefield Western, Inc., 72 Cal. App. 4th 789, 810 (1999).  In general, stray remarks not

13  acted upon or communicated to a decision maker are insufficient to establish pretext.

14  Mondero v. Salt River Project, 400 F.3d 1207, 1213 (9th Cir. 2005).  There is no evidence that

15  the comments attributed to Burmeister were directed at her or at any other Apple employee,

16  or were uttered in any employment-related context.

17         Plaintiff provided no evidence that anyone else at Apple made racially disparaging

18  comments, or that anyone at Apple took any action based on her race.  Burmeister's

19  comments, while tasteless, are not sufficient on their own to provide specific and substantial

20  evidence of pretext, particularly in view of the fact that plaintiff testified in her deposition that

21  she never believed that Burmeister harbored any animus against African-Americans based on

22  race.  When she was asked in her deposition whether Burmeister's conduct toward her was in

23  any way connected with her race, plaintiff testified that, in her view, Burmeister's conduct

24  towards her "was because someone else was using it as a racial bias and he went along with

25  it."  Moreover, it is undisputed that it was Burmeister who hired or recommended plaintiff for

26  three jobs in which she worked under him, who evaluated her performance as satisfactory

27  over time, who granted her substantial salary increases at jobs prior to her employment at

28  Apple, and who had a long-standing social relationship with her and her family.

United States District Court

For the Northern District of California

1    Plaintiff's effort to provide circumstantial evidence is even less effective, as she relies

2 entirely on the assertion that she was the only African-American in her department.  A

3 statistical incident of one in a seven-person department is not significant.  Statistics are

4 probative only if they are based on a sufficiently large sample size, see Aragon, 292 F.3d at

5 663, which is not the case here.

6    The court finds that summary judgment must be GRANTED on the claims of racial

7 discrimination because plaintiff has failed to provide evidence showing that Apple's

8 explanation for the failure to promote her and failure to give her an increase in salary was

9 pretextual.

10    2.    Harassment

11    In the fifth cause of action plaintiff alleges harassment on the basis of race against

12 Apple, Walker, and Parker.  She asserts that by "creating, maintaining, encouraging, failing to

13 investigate properly, and by failing to remedy a hostile work environment," defendants violated

14 FEHA.  Plaintiff claims that defendants Apple, Walker, and Parker "created several new

15 policies targeting plaintiff's habits" – specifically, that defendants changed starting and ending

16 times for the workday, which impacted plaintiff but no other employees.  She claims that these

17 changes prevented her from attending her therapy appointments.  She asserts that after she

18 complained about differential treatment, Apple, Walker and Parker disabled her network

19 password and building access card, removed the nameplate from her door, interrogated her

20 co-workers about her, and reduced her workload drastically.

21    Under FEHA, it is unlawful for an employer to harass any employee based on race.

22 Cal. Gov. Code § 12940, subd. (j)(1).  Harassment is distinct from discrimination.  Janken v.

23 GM Hughes Electronics, 46 Cal. App. 4th 55, 64-65 (1996).  To establish a prima facie case

24 of harassment, plaintiff must show that she was subject to a hostile work environment based

25 on her race, and that the harassment was sufficiently pervasive so as to alter the conditions of

26 employment and create an abusive work environment.  Doe v. Capital Cities, 50 Cal. App. 4th

27 1038, 1045 (1996).

28    "[H]arassment consists of conduct outside the scope of necessary job performance,

17

United States District Court

For the Northern District of California

1   conduct presumably engaged in for personal gratification, because of meanness or bigotry, or

2   for other personal motives. Harassment is not conduct of a type necessary for management of

3   the employer's business or performance of the supervisory employee's job." Janken, 46 Cal.

4   App. 4th at 63.  Harassment may include racial epithets and racially derogatory comments;

5   physical interference with normal work movement; and racially derogatory posters, cartoons or

6   drawings.  2 Cal. Code Regs., § 7287.6, subd. (b)(1); see also Janken, 46 Cal. App. 4th at

7   63.

8        By contrast, making a personnel decision is conduct of a type fundamentally

9   different from the type of conduct that constitutes harassment.

10

11       Commonly necessary personnel management actions such as hiring and firing,
         job or project assignments, office or work station assignments, promotion or
         demotion, performance evaluations, the provision of support, the assignment or

12       nonassignment of supervisory functions, deciding who will and who will not
         attend meetings, deciding who will be laid off, and the like, do not come within

13       the meaning of harassment.

14   Janken, 46 Cal. App. 4th at 64-65.

15       In its motion, Apple asserts that its potential liability is derived from the alleged conduct

16   of Walker and Parker, and so refers to the motions to dismiss filed by those two defendants.

17            a.    Walker

18       Walker was the Chief Talent Officer at Apple, responsible for all human resources

19   functions.  During the time plaintiff was at Apple, Walker held quarterly HR staff meetings

20   which plaintiff and other members of the HR Department attended.  Plaintiff testified in her

21   deposition that at each of the meetings she attended, Walker discussed his goal of increasing

22   diversity at Apple.  He discussed various organizations, including the Black MBA Association,

23   that he was working with to increase diversity hiring.  Smith and Goodson (both African-

24   American) state in their declarations that Walker was committed to encouraging and

25   supporting diversity at Apple and providing opportunities for minorities, including African-

26   American women.

27       Walker had four Senior Directors reporting to him.  Two were African-American

28   women, one was Asian, and one was Caucasian.  Walker had promoted each of those

United States District Court

For the Northern District of California

1   individuals into their positions.  Eight of the thirteen people who reported directly to Walker

2   were members of minority races, and four of those were African-American.

3       Walker testified that he and plaintiff had only two direct interactions during the time

4   plaintiff was employed at Apple.  Plaintiff testified that she had "two or three" conversations

5   with Walker, consisting of "basic idle chitchat."  She recalled the subjects as "[t]he weather or

6   the final bonus promotion report that I gave a presentation to him on one occasion, and then to

7   Fred on the other occasion."  She stated that Walker told her she had done a good job on the

8   report, and that he was "bragging to everyone about the report."  She said she had no other

9   communications with Walker, and admitted that he never harassed her directly – not face-to-

10  face, not through an e-mail, not through a phone call.

11      Walker argues that the race harassment claim against him is baseless.  First, he

12  asserts that he did not participate in any of the actions that plaintiff alleges as "harassment."

13  He contends that plaintiff has no evidence showing that he created a Compensation Group

14  work policy, and as confirmed by his deposition testimony, he was not involved in the

15  promulgation of the policy.  He claims there is no evidence that he interrogated any of

16  plaintiff's co-workers about her, and he testified in his deposition that he did not.  He also

17  asserts that there is no evidence that he prevented plaintiff from attending her therapy

18  appointments, and he asserts in his declaration that he did not.  Moreover, he contends that

19  the evidence shows that plaintiff continued to see her therapist until April 2004, when she

20  stopped herself because of her financial situation.  Finally, he argues that there is no evidence

21  that he disabled plaintiff's access during her suspension or removed her nameplate from her

22  door, and he states in his declaration that he did not.  Indeed, as plaintiff admitted in her

23  deposition, Walker himself took no action to harass her.[2]

24      Walker argues further that plaintiff's harassment claim is not actionable race

25  harassment because the actions about which plaintiff complains can all be considered

26

27  _____

28      [2] Walker does not mention the allegation that plaintiff's job duties were severely curtailed
    after she returned from the suspension, but plaintiff provides no evidence that Walker was
    involved in any decision regarding her job duties.

United States District Court
For the Northern District of California

1   personal management activity related to the workplace investigation that followed plaintiff's

2   misuse of confidential data.  Under California law, a manager cannot be individually liable for

3   damages based on personnel management activity unless the liability arises from statute.

4   Janken, 46 Cal. App. 4th at 66.

5          Walker contends that even if the alleged conduct is not personnel management activity,

6   it is neither severe nor pervasive.  Whether harassment is sufficiently severe or pervasive

7   must be judged by an objective standard.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22

8   (1993).  Walker argues that these activities, which he claims were accompanied by no

9   shouting or even rudeness, cannot be considered severe or pervasive.

10          Finally, Walker claims that there is no evidence of racial animus on his part.  He asserts

11   that even if plaintiff could prove that he engaged in any of this conduct (which she cannot), and

12   even if the conduct could be considered sufficiently severe and pervasive (which it cannot),

13   there are no facts whatsoever to suggest that Walker held any animus against African-

14   American employees.  He maintains that, indeed, the reverse is true, as the evidence shows

15   that Walker was committed to workplace diversity, recruited had hired qualified African-

16   American employees, and promoted employees who were members of minority races.

17          In opposition, plaintiff argues that there is evidence that Burmeister made a number of

18   derogatory comments about African-Americans, including comments to the effect that Black

19   people, especially Black women, are "so fat."  Plaintiff claims that such comments are "the

20   epitome of conduct engaged in for meanness or bigotry."  Plaintiff also asserts that Walker

21   testified that he gave Burmeister free reign "as long as [he] was not violating wage and hour

22   laws."[3]

23          The court finds that the motion must be GRANTED as to Walker.  Plaintiff has not met

24   her burden of showing that Walker personally engaged in harassing conduct that was so

25   severe or pervasive as to alter the conditions of her employment, or that he engaged in any

26   conduct that was motivated by racial animus.  She does not dispute Walker's assertion that

27   _____

28          [3]  This is the total of plaintiff's argument regarding harassment, and applies to both Walker and Parker.

United States District Court

For the Northern District of California

1    any action allegedly taken by Walker was personnel management activity for which a

2    supervisory employee cannot be liable as a matter of law.  She does not dispute that the

3    actions allegedly taken against her were neither severe nor pervasive, and she provides no

4    evidence that any conduct engaged in by Walker was due to her race, or that Walker even

5    engaged in the conduct that she alleges was harassing.

6         The sole piece of evidence plaintiff cites in support of her claim that Walker harassed

7    her is the alleged derogatory comments made by Burmeister, who is not even named as a

8    defendant in the harassment cause of action.  California courts have long held that a

9    supervisor cannot be sued individually under FEHA for harassment by another employee,

10   even where the plaintiff actually complains to the supervisor about the alleged harassment.

11   See Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1325-28 (1996); Janken, 46 Cal. App. 4th at

12   64.  There is no evidence, moreover, that Walker had any knowledge of these alleged

13   harassing comments by Burmeister.  Nor is there any evidence that plaintiff made any

14   complaints about the alleged comments, either to Burmeister or Walker.

15              b.    Parker

16        Parker makes three arguments in support of her motion.  She argues, first, that all

17   activity alleged against her (regardless of whether it occurred) pertains to day-to-day

18   management activity, which does not constitute harassment.  Second, she contends that the

19   conduct alleged against her is not severe or pervasive, judged under an objective standard.

20   She asserts that plaintiff alleges no conduct involving shouting, slurs, or even impolite conduct,

21   and that the activities mentioned by plaintiff simply therefore cannot objectively be considered

22   severe or pervasive.

23        Third, Parker argues that there is no evidence that any of her alleged conduct was tied

24   to plaintiff's race.  Parker contends that plaintiff has no evidence that Parker harbored animus

25   against African-Americans.  Parker asserts that plaintiff's only "evidence" that Parker

26   discriminates on the basis of race is plaintiff's belief that Parker considered plaintiff's

27   November 12 e-mail to Walker to constitute a discrimination claim.  Parker argues that

28   plaintiff's opinion as to whether an e-mail is a discrimination claim is not probative of whether

United States District Court

For the Northern District of California

Parker discriminates.

Plaintiff makes the same arguments in opposition to Parker's motion as she did in opposition to Walker's.  She contends that Burmeister made a number of derogatory comments about African-Americans, including comments to the effect that Black people, especially Black women, are "so fat."  Plaintiff claims that such comments are "the epitome of conduct engaged in for meanness or bigotry."  Plaintiff also asserts that Walker testified that he gave Burmeister free reign "as long as [he] was not violating wage and hour laws."

The court finds that the motion must be GRANTED as to Parker.  As with the claim against Walker, Plaintiff does not dispute that any conduct allegedly taken by Parker was personnel management activity for which a supervisory employee cannot be liable as a matter of law; does not dispute that the conduct allegedly taken against her was neither severe nor pervasive; provides no evidence that the conduct was taken on account of plaintiff's race; and fails to provide any evidence that Parker even engaged in the conduct alleged to be harassing.  As with Walker, plaintiff has not met her burden of showing that Parker personally engaged in harassing conduct that was so severe or pervasive as to alter the conditions of her employment, or that she engaged in any conduct that was motivated by racial animus.

The motion must also be GRANTED as to Apple, as Apple's liability depends on the liability of Walker and Parker.  While it is true that an employer is strictly liable for harassment of an employee by a supervisor, State Dep't of Health Servs. v. Superior Court, 31 Cal. 4th 1026, 1041 (2003), the court's finding that summary judgment must be granted as to both Walker and Parker on the harassment claim necessarily means that Apple's motion must also be granted.

3.   Retaliation

In the sixth cause of action, plaintiff alleges a claim of retaliation against Apple, Walker, Parker, and Burmeister.  She asserts that she complained to defendants on numerous occasions that she was being harassed and denied promotional opportunities based on her race.  She alleges that defendants "had numerous opportunities to remedy the hostility of their workplace, but Apple, through its management level employees and agents, chose to engage

United States District Court

For the Northern District of California

1    in a campaign of intimidation, harassment and abuse as alleged."

2         She asserts that after she complained about "differential treatment and compensation,

3    Walker and Parker created several new policies regarding employee attendance, which she

4    claims targeted her "habits."  Specifically, she alleges that Walker, Parker, and Burmeister

5    prevented her from attending therapy sessions.  She alleges that the timing of these changes,

6    combined with the fact that she was the only employee affected, clearly indicates that they

7    were designed to retaliate against her for complaining about differential treatment to

8    supervisors, as well to the DFEH.  She alleges further that after she complained about

9    differential treatment and compensation, Apple, Walker, and Parker disabled her network

10   password and building access card, and that Walker and Parker removed the nameplate from

11   her door, interrogated her co-workers about her, and drastically reduced her workload.

12        California Government Code § 12940, subdivision (h) makes it unlawful for any

13   employer "to discharge, expel, or otherwise discriminate against any person because the

14   person has opposed any practices forbidden under this part or because the person has filed a

15   complaint, testified, or assisted in any proceeding under this part."  Subdivision (a) of the

16   statute specifies the prohibited employment practices, which include harassment and

17   discrimination because of race, sex, religion or national origin.

18        California courts apply the traditional McDonnell-Douglas shifting-burdens analysis in

19   cases alleging violation of state anti-discrimination laws.  See, e.g., Nelson v. United Tech., 74

20   Cal. App. 4th 597, 613 (1999).  To establish a prima facie case of retaliation in violation of

21   FEHA,[4] a plaintiff must show that she engaged in a protected activity, that the employer

22   subjected her to an adverse employment action, and that a causal link existed between the

23   protected activity and the adverse action.  Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 32

24   Cal. Rptr. 3d 436, 444-45 (2005).  Once a prima facie case has been established, the burden

25   shifts to the defendant to offer a legitimate non-retaliatory explanation for its conduct.  If the

26   defendant offers a legitimate, non-retaliatory reason, the burden then shifts back to the plaintiff

27   _____

28        [4] Under California law, requisites for proving unlawful retaliation under FEHA are the same
     as for Title VII.  Flait v. North Am. Watch Corp., 3 Cal. App. 4th 467, 475-76 (1992).

United States District Court

For the Northern District of California

1   to show that the proffered explanation is merely a pretext for retaliation.  Flait, 3 Cal. App. 4th

2   at 476.

3          In its motion, Apple asserts that its potential liability is derived from the alleged conduct

4   of Walker, Parker, and Burmeister, and so refers to the motions to dismiss filed by those

5   defendants.

6                  a.     Walker

7          Plaintiff claims that Walker retaliated against her for sending the November 12th

8   e-mail by changing company policies that affected her (by preventing her from attending

9   therapy sessions), by conducting an investigation into her disclosure of confidential employee

10  information (which included questioning other employees) and by suspending her (which

11  included blocking her network and employee access, removing her name from the door, and

12  possibly reducing her workload).  She also suggests that the suspension pending the internal

13  investigation of her misuse of confidential information, and the March 2004 lay-off were

14  retaliatory.

15         Walker argues that plaintiff cannot establish a prima facie case of retaliation because

16  she cannot show she engaged in protected activity or that she suffered an adverse action by

17  Walker.  "Protected activities" fall into two categories:  1) opposing any practices forbidden

18  under FEHA; and 2) filing a complaint, testifying, or assisting in any FEHA proceeding.  Cal.

19  Gov. Code, § 12940(h).  Opposing practices prohibited by FEHA includes 1) opposing

20  employment practices which an individual reasonably believes to be an FEHA violation; and

21  2) participating in an activity which is perceived by the employer as opposition to

22  discrimination.  Cal. Admin. Code Tit. 2, § 7287.8(a)(1)(C), (D).

23         Walker argues that the sending of the November 12th e-mail cannot be considered

24  "filing a complaint" because plaintiff testified in her deposition that her intention in sending the

25  e-mail was not to complain that she had been the victim of race discrimination or of any other

26  type of discrimination, but rather to ask Walker to reconsider and give her a raise or a

27  promotion.  In addition, she acknowledged that she could not have been participating in a

28  "protected activity" at the time she sent the e-mail because no investigation or proceeding

United States District Court

For the Northern District of California

1   existed.

2          Walker also contends that plaintiff did not engage in "oppositional" activities because

3   she was not opposing a practice made unlawful by Title VII or FEHA.  Walker asserts that a

4   demand for a specific outcome – here, a raise and promotion – that is not tied to actual

5   discrimination cannot be protected activity.  Walker argues in addition that the act of sending

6   confidential information outside of Apple was not protected because Apple's interest in

7   maintaining the confidentiality of employee records outweighs any interest plaintiff might have

8   had in sharing that information with third parties.  Thus, Walker asserts, plaintiff's conduct in

9   accessing, using, and disclosing the private information of her colleagues for her own

10  purposes cannot be considered a reasonable good faith protestation.

11         Walker argues further that plaintiff cannot show that he was responsible for any alleged

12  adverse action.  He notes that plaintiff admitted in her deposition that she was not demoted as

13  a result of the investigation concerning her handling of confidential material, and that she did

14  not suffer any loss of pay grade, or loss of any money whatsoever – her title, office, and

15  compensation remained the same.  Walker contends that the acts of promulgating new

16  department-wide personnel policies, disabling access to Apple during the period of paid

17  suspension, changing computer access to coincide with a new assignment, and conducting

18  an investigation that resulted in no discipline, had nothing to do with Walker and cannot be

19  said to have had a substantial and adverse material effect on plaintiff's employment.

20         Finally, with regard to any possible claim that plaintiff might make that she was laid off

21  in retaliation for engaging in protected activity,[5] Walker argues that the evidence shows he

22  was not involved in the decision to lay her off.  Both Walker and Burmeister state in their

23  declarations that Burmeister made the decision to lay plaintiff off.

24         In response, plaintiff argues that she did engage in protected activity, and that she did

25

26          [5]  The allegations under the "Retaliation" cause of action in the 5thAC do not mention the
27  lay-off.  However, in the "General Allegations" section, plaintiff asserts that defendants "terminated
    [plaintiff] after she filed a lawsuit against them."  As to that last allegation, plaintiff was laid off on
28  March 4, 2004, which, according to the docket, is the same day that Apple was served with the
    summons and complaint.

United States District Court

For the Northern District of California

1   suffer an adverse action.  She contends that the November 12th e-mail specifically identified

2   non-African-American employees in the Compensation Group who were paid more than

3   plaintiff was, despite the fact that she had an MBA, six years of compensation experience,

4   and a "certification" in compensation.[6]  She claims that the e-mail "substantively functioned as

5   a complaint," regardless of whether she herself actually characterized it as such.  She

6   maintains that the e-mail was an attempt to bring potential discrimination to the attention of

7   someone in a position to remedy the situation, and that the question whether her belief that

8   she was discriminated against was in good faith and sincere presents a triable issue of fact

9   that precludes summary judgment.

10          Plaintiff also argues that she suffered an adverse action.  She contends that after she

11  returned from the suspension, her workload was drastically reduced – her former projects

12  were reassigned and she was assigned to handle Latin America and Canada, along with

13  another employee (who was also given additional projects, while she herself was not).  She

14  argues (without any support) that an employee whose workload has been drastically reduced

15  is vulnerable to a reduction in force, as her contributions are less visible and she seems less

16  valuable to the company.  She also suggests that the lay-off was an adverse action.

17          Plaintiff contends in addition that there is a triable issue as to the causal link between

18  the sending of the e-mail and the alleged adverse action.  She claims that improper motive

19  can be inferred from the fact that she sent the e-mail on November 12, 2003, and she was laid

20  off three and a half months later, in March 2004.

21          She does not respond to Walker's argument that she can provide no evidence that

22  Walker himself subjected her to any adverse actions.  In fact, she says nothing at all about

23  Walker, except in the most general terms – "it was [Walker's] call to Parker that set in motion

24  the chain of events that are now at issue;" and "Walker admits that he instructed Sheri Parker,

25  employee relations director, to investigate the [e-mail] and to take appropriate action;" and

26  _____

27          [6] As evidence of this, plaintiff cites to a "Patterson Declaration" that was never filed.  In the
    "amended opposition," plaintiff cites to her deposition testimony, rather than to the nonexistent

28  Patterson Declaration.  However, that testimony, even had the court not stricken the amended
    opposition, does not support plaintiff's factual assertions.

1    that she sent Walker the November 12th e-mail in order to bring the information in it to

2    Walker's attention.

3       The court finds that the motion must be GRANTED as to Walker.  Plaintiff has not

4    established her prima facie case, as she has not provided evidence of any adverse action

5    taken by Walker, or even any evidence that he engaged in any of the conduct that she has

6    identified as retaliatory.

7       In addition, plaintiff has not shown that she engaged in any protected activity prior to the

8    filing of the EEOC/DFEH charges.  Indeed, the evidence shows that she accessed the

9    confidential information for her own benefit – not as part of her legitimate work duties, or to

10    make a complaint of discrimination.  Certainly the act of accessing confidential employee

11    information and sending the November 12th e-mail was not protected activity.  Despite the

12    fact that the e-mail does state, for each of the various employees, his or her gender and race

13    (among other things), plaintiff cannot now claim it was intended as a complaint about

14    discriminatory treatment when she previously testified under oath that it was not.  In addition,

15    she stated in the January 8, 2004, e-mail that "I made no claim or allegation of racial

16    discrimination in the [November 12th e-mail]."

17          b.      Parker

18       Plaintiff claims that Parker retaliated against her for sending the November 12th

19    e-mail by changing company policies that affected her (by preventing her from attending

20    therapy sessions), by conducting an investigation into her disclosure of confidential employee

21    information (which included questioning other employees) and by suspending her (which

22    included blocking her network and employee access, removing her name from the door, and

23    possibly reducing her workload).  She also suggests that the suspension pending the internal

24    investigation of her misuse of confidential information, and the March 2004 lay-off were

25    retaliatory.

26       As did Walker, Parker argues that plaintiff cannot establish a prima facie case

27    because she cannot show that she engaged in protected activity prior to the filing of the

28    EEOC/DFEH charges, and because she cannot show any adverse actions by Parker, making

United States District Court

For the Northern District of California

1   the same argument as Walker, above.  In addition, Parker contends that she had no role in

2   plaintiff's working conditions after the investigation, and that her sole involvement was limited

3   to overseeing the legitimate internal investigation of plaintiff's misuse of confidential employee

4   information.

5          Parker asserts that even if disabling of plaintiff's network and building access during

6   her suspension, asking questions of the Compensation Group employees during the

7   investigation, and promulgating new department policies regarding confidential information

8   (and presumably, employee hours) could be construed as adverse actions, plaintiff has

9   provided no evidence of retaliatory motive.  Parker contends that the evidence shows that

10  these actions were taken as part of a good-faith investigation of plaintiff's apparent misuse of

11  confidential Apple personnel data, and that Parker's actions were not retaliatory.

12         Finally, Parker contends that she was not involved in plaintiff's lay-off.  Both Parker and

13  Burmeister state in their declarations that the decision to lay off plaintiff was made by

14  Burmeister.

15         Plaintiff's opposition is as stated above, with regard to Walker.  Specifically, plaintiff

16  claims that she did engage in protected activity, attempting to cast the November 12th

17  e-mail as a complaint of racial discrimination.  She also asserts that she suffered adverse

18  actions, claiming that after she returned from the suspension, her workload was reduced.  She

19  also claims that improper motive can be inferred from the fact that she sent the e-mail on

20  November 12, 2003, while she was laid off on March 4, 2005.

21         The court finds that the motion must be GRANTED as to Parker, for the reasons stated

22  above with regard to Walker.  Plaintiff has not shown that she engaged in any protected

23  activity, or that Parker engaged in any adverse action.  In addition, plaintiff provides no

24  evidence that the actions taken by Parker during the course of the investigation into plaintiff's

25  misuse of confidential employee information were not part of Apple's legitimate business

26  response to plaintiff's wrongful actions.

27                  c.      Burmeister

28         The only allegation of retaliation that plaintiff specifically makes against Burmeister in

United States District Court

For the Northern District of California

1   the 5thAC is that he prevented her from attending therapy sessions.  She also alleged, in the

2   amended DFEH charge filed January 28, 2004, that Burmeister's decision to lay her off was

3   retaliatory.

4        Burmeister argues that plaintiff cannot establish a prima facie case because she

5   cannot show she engaged in protected activity prior to the filing of the EEOC/DFEH charges.

6   This is the same argument made by Walker and Parker, above.

7        Burmeister also contends that plaintiff cannot establish a prima facie case because

8   she cannot show that she suffered an adverse action.  He asserts that the sole allegation –

9   that he prevented her from attending therapy appointments – is not sufficient to constitute an

10  adverse action because it is not an act that has a substantial and material adverse effect on

11  the terms and conditions of the plaintiff's employment.   Burmeister notes that plaintiff does not

12  claim that she suffered any loss of pay grade, or loss of any compensation whatsoever as a

13  result of her alleged inability to attend therapy appointments.  Moreover, Burmeister notes that

14  plaintiff admitted in her deposition that she attended her therapy appointments throughout the

15  remainder of her employment at Apple, which constitutes a concession that this claim is false.

16  He argues that she cannot establish retaliatory motive for a non-existent cause of action.

17       Finally, Burmeister asserts that plaintiff provides no evidence of pretext or retaliatory

18  motive as to the lay-off.  He argues that the undisputed evidence shows that budget cuts

19  required him to lay off three of the seven employees who reported to him, and that this

20  decision was based on legitimate reasons – Apple cut the total budget for Walker's

21  department, and Walker required three of his subordinates, including Burmeister, to reduce

22  their budgets by $200,000 each.  Burmeister concluded that plaintiff should be one of the

23  three employees laid off because she was one of the lowest performing.  The laid-off

24  employees were not replaced, and a month later, when another employee left the group, no

25  replacement was hired.

26       Burmeister contends that plaintiff provides no evidence that the real reason for her lay-

27  off was retaliation for making a protected complaint of discrimination.  He notes that when

28  plaintiff first raised the issue of retaliation in the January 8, 2004 e-mail to Walker, Apple

United States District Court

For the Northern District of California

1   immediately hired independent investigator Rebecca Speer to investigate plaintiff's claims.

2   Speer found no evidence of wrongdoing by anyone at Apple.  Burmeister claims that he had

3   no motive to retaliate against plaintiff for making any complaints, as he was not the subject of

4   any of plaintiff's complaints until he was named a defendant in this suit in January 2005, after

5   the case had already been pending for more than a year.

6        Plaintiff's opposition is as stated above, with regard to Walker and Parker.

7   Specifically, she claims that she did engage in protected activity, attempting to cast the

8   November 12th e-mail as a complaint of racial discrimination.  She also asserts that she

9   suffered adverse actions, claiming that after she returned from the suspension, her workload

10  was reduced.  She also claims that improper motive can be inferred from the fact that she sent

11  the e-mail on November 12, 2003, while she was laid off on March 4, 2005.

12       The court finds that the motion must be GRANTED as to Burmeister.  For the reasons

13  stated above with regard to Walker and Parker, plaintiff cannot show that she engaged in

14  protected activity before she filed the DFEH charges.  Moreover, she cannot show that she

15  suffered an adverse action, because she was suspended with pay, and suffered no loss of

16  compensation or benefits, and no demotion or job title change; and cannot show a causal

17  nexus because there was no protected activity prior to plaintiff's suspension, which occurred

18  before she filed any charge with DFEH.

19       Finally, plaintiff can show no evidence of retaliatory motive, as Burmeister was not

20  named by plaintiff in any administrative charge or complaint until November 2004, and was not

21  named as a defendant in this lawsuit until January 2005, a year after the original complaint

22  was filed.  Thus, Burmeister would have had no reason to retaliate against plaintiff.  Moreover,

23  Burmeister has provided evidence of a legitimate business reason for the suspension, and

24  plaintiff has provided no evidence showing that the articulated reason is pretextual.

25       4.   Failure to prevent discrimination and failure to maintain environment free

26            from harassment

27       In the seventh cause of action, plaintiff alleges that Apple failed to take reasonable

28  steps to prevent discrimination from occurring.  In the eighth cause of action, plaintiff alleges

30

United States District Court

For the Northern District of California

1   that Apple failed to maintain an environment free from harassment.

2          California Government Code § 12940 provides that "[i]t shall be an unlawful

3   employment practice, unless based upon a bona fide occupational qualification . . . (k) For an

4   employer . . . to fail to take all reasonable steps necessary to prevent discrimination and

5   harassment from occurring."  The California Supreme Court has stated that FEHA "makes it a

6   separate unlawful employment practice" for an employer to violate § 12940(k).  State Dept. of

7   Health Servs., 31 Cal. 4th at 1040.

8          However, there can be no violation of 12940(k) absent a finding of actual

9   discrimination.  See Tritchler v. County of Lake, 358 F.3d 1150, 1155 (9th Cir. 2004) (citing

10  Trujillo v. North County Transit Dist., 63 Cal. App. 4th 280, 283-84 (1998)).  "[T]here's no logic

11  that says an employee who has not been discriminated against can sue an employer for not

12  preventing discrimination that didn't happen."  Trujillo, 63 Cal. App. 4th at 289.

13         Apple argues that these two claims fail because plaintiff cannot state a claim for either

14  discrimination or harassment.  Apple also asserts that plaintiff cannot show that Apple lacked

15  adequate policies to prevent discrimination, as Apple has provided evidence  that it has an

16  extensive anti-discrimination program, which includes clear and frequently-disseminated

17  policies setting forth Apple's stand against discrimination and other types of unlawful conduct.

18  Apple also notes that although plaintiff did not believe that her November 12th e-mail was a

19  discrimination complaint, Apple immediately hired an outside investigator to look into her

20  claims and address any race or gender concerns.  See Northrop Grumman Corp. v. Workers'

21  Comp. Appeals Bd., 103 Cal. App. 4th 1021, 1035 (2002) ("Prompt investigation of a

22  discrimination claim is a necessary step by which an employer meets its obligation [under

23  section 12940(k)").

24         Plaintiff does not oppose the motion as to these two causes of action in her original

25  opposition.  In the untimely "amended opposition," plaintiff argues that while Apple did conduct

26  an investigation, that investigation "did not meet the appropriate standards."  Relying on Silva

27  v. Lucky Stores, Inc., 65 Cal. App. 4th 256, 272 (1998), plaintiff argues that an investigation

28  should be performed by someone who is uninvolved in the incident and who is trained to

United States District Court

For the Northern District of California

1  investigate, and should occur promptly; that important witnesses should provide their own

2  written statements; that the investigator should ask "open-ended" questions and attempt to

3  draw out facts, not opinions; that those interviewed should be encouraged to contact

4  investigator later if they think of anything else; that the complainant should be notified of the

5  investigation and should be afforded an opportunity to present her own version of events; and

6  that after interviews are completed, the complainant should have opportunity to comment on

7  result of investigation.

8         In her amended opposition, plaintiff claims that Rebecca Speer, the third-party

9  investigator hired by Apple, was not "uninvolved" in the investigation, because she was hired

10 by Apple.  Plaintiff also complains that Speers' first report wasn't completed until two months

11 after the original complaint, that the employees who were interviewed did not provide their

12 own written statements, and that plaintiff was not kept informed of all the steps taken or the

13 results of the investigation.  Plaintiff asserts that she was willing to speak with Speer, but only

14 with her attorney present, and that Apple refused to allow her to bring her attorney to the

15 interview because it was an "internal" Apple investigation.  Plaintiff claims that the result was a

16 biased summary that did not tell all sides of the story.  This, plaintiff asserts, Apple did not take

17 all reasonable steps to maintain a workplace free from discrimination.

18        The court finds that the motion must be GRANTED, as plaintiff has not established the

19 existence of any actual discrimination or harassment.  The alleged defects in the investigation

20 cannot provide a basis for a claim of failure to prevent discrimination, as plaintiff admits she

21 sent the November 12th e-mail in an attempt to obtain a promotion or increased

22 compensation, not in an effort to complain about discrimination.  Moreover, the California

23 Supreme Court has made clear that the requirement of a fair procedure does not compel

24 adherence to a single process, but may be satisfied by any of a number of procedures.  See

25 Cotran v. Rollins Hudig Hall Int'l, Inc., 17 Cal. 4th 93, 108 (1998).

26        5.    Defamation

27        In the ninth and tenth causes of action, plaintiff alleges claims of slander and libel

28 against Apple, Walker, and Parker, asserting that Walker and Parker made statements that

United States District Court

For the Northern District of California

1   implied that plaintiff had accessed her co-workers' records, including their compensation

2   history, for her own benefit.  Plaintiff alleges that these statements were false, and were

3   slanderous because they lowered plaintiff's reputation in the community.

4        To prevail on a claim of defamation, a plaintiff must prove an intentional publication of a

5   statement of fact that is false, unprivileged, and has a natural tendency to injure or which

6   causes special damage.  Cal. Civ. Code §§ 45, 45a, 46.  Truth is a complete defense to a

7   claim of defamation.  Smith v. Maldonado, 72 Cal. App. 4th 637, 646 (1999).

8        In its motion, Apple argues that its potential liability is derived from the conduct of

9   Walker and Parker, and refers to those defendants' motions.  Walker argues that plaintiff's

10  defamation claim fails to meet any of the required elements.  He asserts that it is undisputed

11  that he was not involved in the investigation of plaintiff's handling of Apple's confidential

12  personnel information, and that he made no such statements.  He contends that there is no

13  evidence that he communicated anything in writing on this subject to Speer or to anyone else.

14  He also asserts that it is undisputed that plaintiff did access her co-workers' private

15  compensation information for her own use, and argues that truth is a complete defense to a

16  claim of defamation.

17       Parker makes arguments similar to Walker's.  She notes that it is undisputed that she

18  did not specifically discuss plaintiff in the course of discussing Apple's policies regarding

19  confidential information with the Compensation Group employees.  She also contends that

20  there is no evidence that she made any false verbal statements about plaintiff, or that either

21  she or Walker made any written statements in which they "accused" plaintiff of accessing her

22  co-workers' information.  Moreover, Parker notes, plaintiff did in fact access her co-workers'

23  private compensation information for her own purposes.  Thus, she argues, as truth is a

24  complete defense, the claim has no merit.

25       Parker also asserts that plaintiff cannot establish that she suffered any special damage

26  as a proximate result of Parker's investigation.  Parker argues that her contention that Parker

27  defamed her by asking about misuse of confidential information is not defamatory on its face,

28  and cannot therefore be defamation per se.  Defamatory language not libelous on its face is

United States District Court

For the Northern District of California

1    not actionable unless the plaintiff alleges and proves that she suffered special damages as a

2    result.  See Cal. Civ. Code § 45a; see also 5 Witkin, Summary of Cal. Law, Torts, § 480.

3    Parker contends that plaintiff has offered no such evidence, and that the claim fails on this

4    ground as well.

5              In opposition, plaintiff asserts that she can show that Apple, through its agent Steve

6    Burmeister, made statements about her that were false, unprivileged, and had a tendency to

7    injure.  She claims that during the security meeting with Parker and Hull that took place on

8    either November 12 or 13, 2003, Burmeister told Parker and Hull that plaintiff kept "guns" to

9    protect herself, and sat in her family's living room during the L.A. riots, and that she had stated

10   that she would "go out in a blaze of glory" if she were ever terminated, and that she was

11   "looking for a big payout."

12             Plaintiff claims that Burmeister later admitted he thought plaintiff was joking when she

13   said she would "go out in a blaze of glory," and that he testified that her family laughed about

14   her sitting in her living room with a gun.  Plaintiff asserts that Burmeister "clearly" did not

15   believe that plaintiff posed a threat to herself or to others, and yet he told Parker and Hull that

16   she did.  Plaintiff also claims that Burmeister testified that the comment about the "big payout"

17   had been made in reference to plaintiff's supervisor at Rand, and not about her employment at

18   Apple, and that it was not made in the context of indicating a desire to take advantage of an

19   employer.

20             Plaintiff asserts that the privilege that defendants now assert  – the "common interest

21   privilege" – is not absolute.  She argues that it can be overcome by evidence of actual malice

22   on the part of the speaker.  She argues that Burmeister "clearly" did not believe the statements

23   he made about plaintiff were true, and that this creates a strong presumption of malice.

24             The court finds that the motion must be GRANTED as to Walker and Parker, as plaintiff

25   did not oppose the motion as to those two defendants.  Moreover, it is undisputed that plaintiff

26   did access her co-workers' personnel records, including their compensation history, for her

27   own use.

28             The motion must also be GRANTED as to Apple, as there is no evidence that the

34

United States District Court

For the Northern District of California

statements attributed to Burmeister were false.  The statements cannot form the basis of a libel action because there is no evidence that Burmeister made any such statements in writing.  Further, the statements do not meet the standard for actionable slander because plaintiff admitted in her deposition that she <u>did</u> tell Burmeister that she kept guns to protect herself, and sat in her family's living room during the L.A. riots; that she would "go out in a blaze of glory" if she were ever terminated; and that she was "looking for a big payout."  Thus the statements are true, and cannot form the basis of a claim of defamation.

Further, the "interested party privilege" applies to the statements made by Burmeister to Parker and Hull during the security meeting because they were made in the course of Parker's privileged investigation, between people who had a legitimate interest.  <u>See</u> Cal. Civil Code §§  46, 47(c); <u>Deaile v. Gen'l Tel.</u>, 40 Cal. App. 3d 841, 846 (1974).  Plaintiff has provided no evidence to overcome that privilege, and admits that Burmeister only repeated statements that plaintiff had admittedly made.  There is no evidence of malice.  The evidence shows that Burmeister was simply trying to communicate everything he knew about plaintiff that might have a bearing on her reaction to a suspension.

      6.   <u>Invasion of privacy</u>

In the eleventh cause of action, plaintiff alleges a claim of invasion of privacy against Apple, Walker, and Parker, asserting that Walker and Parker, acting as agents of Apple, confiscated plaintiff's personal laptop computer and read and erased some of the contents.

The elements of a claim of invasion of privacy are 1) a prying or intrusion, 2) which is offensive or objectionable to a reasonable person, 3) into a place or into affairs which are private and entitled to be private.  <u>Shulman v. Group W Productions, Inc.</u>, 18 Cal. 4th 200, 231 (1998).  To prove an actionable intrusion, the plaintiff must show that the defendant penetrated a zone of physical privacy or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff.  <u>Id.</u> at 232.  The plaintiff can prove the tort only if she can show she had an objectively reasonable expectation of seclusion or solitude in the place, conversation, or data source.  <u>Id.</u>

The basis of plaintiff's claim is that Walker and Parker looked at the contents of her

United States District Court

For the Northern District of California

1  laptop, which she used to perform Apple work, while investigating her misuse of confidential

2  information.  Walker argues that the claim against him is baseless, as the evidence shows that

3  he did not even look at the laptop.  Walker also asserts that Apple's written policies made it

4  clear that Apple had the right to inspect computers and that their employees had no

5  expectation of privacy.  Thus, plaintiff could not have had any reasonable expectation that the

6  contents of her laptop, which contained Apple information and data, would remain confidential.

7  In addition, Walker points out, plaintiff consented to the brief retention and review of the

8  contents of her laptop.

9      Parker makes a similar argument, asserting that plaintiff's claim fails because she

10  cannot show that she had any objectively reasonable expectation of privacy in her laptop.

11  Parker also contends that there was no intrusion into plaintiff's private information.  Parker

12  states in her declaration that she told plaintiff she would not look at plaintiff's personal files,

13  and she did not.  She also kept the laptop secured.  When plaintiff asked for the return of her

14  laptop the following day, she was permitted to retrieve it, after the confidential Apple files had

15  been deleted.

16      In opposition, plaintiff argues that Apple's policy about searching computers applies

17  only to Apple-owned computers, and that Apple had no right to search her personal computer.

18  Plaintiff also contends that the search was intrusive, because Apple searched all the files, not

19  just the Apple-related files.  (She provides no evidence in support of this claim.)  Plaintiff also

20  notes that while Apple contends it did not access any of plaintiff's personal information from

21  the laptop, Burmeister testified in his deposition that he took personal papers from plaintiff's

22  desk that included attorneys' names and phone numbers, notes written by plaintiff, and

23  plaintiff's EEOC complaint.[7]  Plaintiff claims that this act of removing the papers, and then

24  ─────────────────────

25      [7]  Plaintiff misstates Burmeister's testimony.  In the deposition excerpt attached as Exh.
A to the Declaration of Waukeen McCoy, Burmeister is recorded as testifying that he did not know
26  whether the documents he saw on plaintiff's desk were EEOC complaints, and that the document
he took was "a yellow piece of paper that just had attorneys' names and numbers and
27  addresses."  He removed this document from plaintiff's desk because he was concerned about
where the confidential Apple personnel data "may have gone outside of the Company."
28  Burmeister stated in his declaration that when he entered plaintiff's work area on November 12th
to retrieve business documents, he discovered that plaintiff had left sensitive employee data

United States District Court

For the Northern District of California

1  copying them (which he allegedly did at Parker's request) constituted invasion of privacy.

2       The court finds that the motion must be GRANTED as to Walker, as there is no

3  evidence that he reviewed any of the information on plaintiff's laptop.  The motion must also be

4  GRANTED as to Parker, as plaintiff consented to hand over her laptop to Parker, and Parker

5  returned it when plaintiff requested it the next day.  In addition, Parker states in her declaration

6  that she did not review plaintiff's private information, and plaintiff provides no evidence to the

7  contrary.[8]

8       As for the new claim – that Burmeister took personal documents from plaintiff's office,

9  and that Parker ordered them copied – the motion must be GRANTED as to Parker and as to

10 Apple.[9]  Under the circumstances (the investigation into plaintiff's use of confidential Apple

11 personnel information), Burmeister was justified in removing any documents containing

12 employee data from the table in plaintiff's office, and Parker was justified in asking Burmeister

13 to make copies.  Moreover, given Apple's written policy – that Apple may review and monitor

14 the contents of employees' "computer(s), file cabinets, desks, and offices (even if locked)" –

15 plaintiff could not have had a reasonable expectation of privacy in the contents of writings she

16 left on a table in her office.

17       7.    Wrongful termination in violation of public policy

18       In the twelfth cause of action, plaintiff alleges wrongful termination in violation of public

19 policy against Apple.  To establish a claim of wrongful discharge in violation of public policy

20 under California law, plaintiff must show (1) that she was a member of a protected class,

21

22 ───────────────

23 unsecured on a table in her office next to what appeared to be a list of non-Apple personnel, which further heightened his concern that plaintiff might have disclosed confidential Apple information to third parties.

24    [8]  According to defendants, Apple information technology analyst Ty Weiss ("Weiss") took

25 an image of plaintiff's laptop and saved a copy on Parker's desktop.  There is no evidence that anyone at Apple other than Parker and Weiss viewed any information on plaintiff's laptop.

26 Plaintiff called the following day and requested the return of her laptop, and  it was returned to her. Weiss explained that he was deleting the confidential Apple files so she could have the laptop

27 back.  Plaintiff stated in her deposition that she was unaware of any facts suggesting that her personal information was accessed.

28    [9]  The claim of invasion of privacy is not asserted against Burmeister.

United States District Court

For the Northern District of California

1  (2) that she was qualified for the position she sought or was performing competently in the

2  position she held, (3) that she was terminated from her employment, and (4) that some other

3  circumstance suggests discriminatory motive – i.e., that there was a nexus between the

4  termination and the plaintiff's status or protected activity, 5) and damages.  See Guz v. Bechtel

5  Nat'l, Inc., 24 Cal 4th 317, 355 (2000).

6         In order to support a wrongful discharge claim under California law, a public policy must

7  be (1) delineated in either constitutional or statutory provisions; (2) "public" in the sense that it

8  "inures to the benefit of the public" rather than serving merely the interests of the individual;

9  (3) well established at the time of the discharge; and (4) "substantial" and "fundamental."

10  Stevenson v. Superior Court, 16 Cal. 4th 880, 901 (1997).

11         According to the 5thAC, the policy is derived from FEHA; California Constitution,

12  Article 1, § 8;[10] and Title VII.  A discharge in violation of FEHA may give rise to a common law

13  claim for wrongful discharge.  City of Moorpark v. Superior Court, 18 Cal. 4th 1143, 1159-60

14  (1998 ).  Federal law, and in particular, Title VII, may supply an alternative public policy basis

15  for a wrongful termination claim.  Phillips v. St. Mary Regional Med. Ctr., 96 Cal. App. 4th 218,

16  234 (2002).  The constitutional prohibition against disqualifying a person from entering or

17  pursuing a business, profession, vocation, or employment because of race, also supports

18  actions alleging wrongful race-based terminations of employment relationships in violation of

19  public policy.  Sistare-Meyer v. Young Men's Christian Assn., 58 Cal. App. 4th 10, 14-15

20  (1997).

21         Apple argues that summary judgment should be granted on this cause of action

22  because plaintiff cannot establish a prima facie case that her termination was in violation of

23  public policy.  To establish a prima facie case regarding her lay-off, plaintiff must show that

24  she belongs to a protected class, that she was performing in a satisfactory manner, was

25

26         [10]   "A person may not be disqualified from entering or pursuing a business, profession,
27  vocation, or employment because of sex, race, creed, color, or national or ethnic origin."  Cal.
   Const., Art. I, § 8.

28

United States District Court

For the Northern District of California

1  discharged, and was replaced by a person with inferior qualifications who was not in the

2  protected class. Guz, 24 Cal. 4th at 354-55.

3        Apple contends that plaintiff cannot show that she was replaced by another person,

4  because the evidence shows that her duties were assumed by the employees remaining in

5  the Compensation Department, and no one was hired to fill her position. Thus, Apple argues,

6  plaintiff cannot establish a prima facie case.

7        Apple also contends that it has articulated a legitimate, nondiscriminatory reason for

8  plaintiff's lay-off. The budgetary shortfall in Apple's HR Department required that some

9  employees be terminated. A reduction-in-force is a legitimate non-discriminatory reason for

10  termination. Winarto v. Toshiba America, 274 F.3d 1276, 1295 (9th Cir. 2001); Martin v.

11  Lockheed Missiles, 29 Cal. App. 4th 1718, 1732 (1994).

12        Thus, the burden shifts to plaintiff to show that Apple's articulated reason was

13  pretextual. Plaintiff must provide either direct evidence of discrimination, or circumstantial

14  evidence that Apple is biased or that Apple's explanation is otherwise unworthy of credence.

15  Coghlan, 413 F.3d at 1094-95; see also Cucuzza v. City of Santa Clara, 104 Cal. App. 4th

16  1031, 1038 (2002). Apple argues that plaintiff cannot show that Apple's stated reason for the

17  lay-off – the budget cuts that required Burmeister to lay off 3 of the 7 employees who reported

18  to him – was pretextual.

19        In opposition, plaintiff contends that she meets the elements of the prima facie case.

20  She was a member of a protected class. She was rated "solid contributor" in her performance

21  evaluation, and asserts that she meets the burden of showing that she was performing

22  satisfactorily. There is no dispute that she was discharged. With regard to the fourth element,

23  plaintiff claims that the number of employees reporting to Burmeister actually increased within

24  a year after plaintiff was terminated, when Ken Lara joined plaintiff's former group.

25        She argues that Apple's articulated reason for the lay-off was pretextual, citing to the

26  same facts she cited in the claims of racial discrimination. She asserts that the fact that

27  Burmeister made racially derogatory comments and the fact that there has been only one

28  African-American consultant in the Compensation Group shows that Apple's explanation is

39

United States District Court

For the Northern District of California

1    unworthy of credence.

2         The court finds that the motion must be GRANTED.  Plaintiff has not established a

3    prima facie case of wrongful termination, because she has not shown that she was replaced.

4    The fact that someone was hired into the Compensation Group a year after plaintiff was laid

5    off is irrelevant, as a year is too long to show replacement.  The evidence shows that

6    Burmeister laid off three employees (including plaintiff) in March 2003, and lost another

7    employee in April 2004 when Higuchi left, and was then given responsibility for a small

8    reporting group in addition to his three remaining Compensation Group employees.  Ken Lara

9    replaced one of the employees in this small additional group.

10        In addition, plaintiff provides no evidence showing pretext or discriminatory intent.  She

11   provides no competent evidence that she should have been retained instead of one of the four

12   employees who were retained after the reduction in force.  Although "solid contributor" was not

13   an unfavorable rating, it is undisputed that Burmeister had received complaints about

14   plaintiff's performance and attitude from two HR representatives (both African-American

15   women).  Burmeister's comments are not sufficient to show pretext, for the reasons stated

16   above in the section on racial discrimination.  The fact that there was only one African-

17   American employee in the seven-person Compensation Group is statistically immaterial.

18        8.    Sexual orientation discrimination

19        In the thirteenth cause of action, plaintiff alleges sexual orientation discrimination

20   (FEHA) against Apple.  Specifically, she alleges that Apple "engaged in a continuing pattern

21   and practice of unlawful sexual orientation discrimination . . . in connection with plaintiff's work

22   assignments, promotion and the terms and conditions of plaintiff's employment, by failing to

23   promote and raise the rate of compensation of plaintiff when plaintiff applied for and was

24   otherwise qualified for a job position and by basing the decision to discipline plaintiff on her

25   sexual orientation."

26        Apple asserts, however, that plaintiff failed to exhaust her administrative remedies with

27   regard to the claim of failure to promote or the claim that she was unlawfully suspended.  Her

28   amended DFEH charge, where she for the first time asserted claims of discrimination based

40

United States District Court

For the Northern District of California

1    on sexual orientation and genetic characteristic, identifies the adverse action only as "laid off."

2    To exhaust her administrative remedies as to a particular act made unlawful by FEHA, the

3    claimant must specify that act in the administrative complaint, even if the complaint does

4    specify other cognizable wrongful acts.  Martin v. Lockheed Missiles and Space Co., Inc., 29

5    Cal. App. 4th 1718, 1724 (1994).  Failure to exhaust is a jurisdictional defect, see id., and

6    Apple argues that summary judgment should be granted for this reason.

7        Apple argues further that even if plaintiff had pled that her lay-off was due to her sexual

8    orientation, she cannot show that Apple's articulated reason for the lay-off was pretextual.

9    Apple asserts that there is no evidence that plaintiff's sexual orientation played any role in

10   Burmeister's decision to lay her off.  Moreover, he had twice hired her at other companies,

11   and had been influential in getting her hired at Apple, and all that time he had been aware of

12   the fact that she was a lesbian.  (Both Burmeister and plaintiff's brother are also gay.)  Apple

13   contends that the fact that Burmeister made the decision to lay her off establishes a strong

14   inference of non-discrimination as a matter of law.

15       In opposition, plaintiff claims to be "at a loss as to why defendant has alleged that she

16   failed to exhaust her administrative remedies," because she filed a DFEH charge in

17   November 2004 asserting sexual orientation discrimination.  Plaintiff contends that she can

18   prove the elements of her claim, and that the failure to promote her, the suspension, and the

19   termination were motivated by sexual orientation discrimination.

20       She contends that after she complained of race discrimination (referring to the

21   November 12th e-mail), Parker and Burmeister held a security meeting with Hull, and that

22   during that meeting, Burmeister indicated that plaintiff was a lesbian.  He testified in his

23   deposition that he did so as part of an explanation as to why she might be unhappy with her

24   life.  Plaintiff claims that there was no legitimate business reason for Burmeister to disclose

25   this information, and that Apple's suggestion that was related to the security concerns is

26   without merit, as the fact that she was a lesbian is irrelevant to Apple's concern over

27   workplace security.  Plaintiff claims (without support) that Burmeister was angry that plaintiff

28   had made allegations that might subject him to scrutiny, and "attempted to capitalize on the

41

United States District Court

For the Northern District of California

1    unfortunate reality of homophobia in order to generate whatever ill-will that he could on the part

2    of Parker and Hull." She claims that the fact that she was suspended for one month shows that

3    Burmeister was effective.

4          Plaintiff asserts that Burmeister's animus toward lesbians is shown by the fact that he

5    made many comments disparaging of lesbians, such as asking, "Why are lesbians so poor?"

6    or "Why are lesbians so hostile?" or "Why are lesbians so violent, what is wrong with you

7    people?" She claims that on one occasion, Burmeister told her about a situation with a

8    lesbian he encountered in San Francisco, and that on another occasion, he asked, "Why are

9    black people, or black women, specifically black lesbians, why are they so fat?" She also

10   asserts that he said that "you people" must "surely love canes, because you need them to

11   support your weight." She contends that he also asked why lesbians had such an affinity

12   towards trucks and camping. She claims to have been offended and insulted by these

13   comments.

14         Finally, plaintiff argues that the "same actor" inference is simply a presumption that can

15   be rebutted, and that it does not apply in this case because it was Kaufman, not

16   Burmeister, who made the decision to hire her.

17         The court finds that the motion must be GRANTED. Plaintiff did not exhaust her

18   administrative remedies with regard to the claim of failure to promote or the claim that she

19   was unlawfully suspended. The administrative charge was premised only on her termination,

20   and she never alleged in the 5thAC that she was terminated based on her sexual orientation.

21   Nor did she state in her deposition that her sexual orientation was a factor in her termination,

22   only in her suspension.

23         Moreover, Apple has provided a legitimate, non-discriminatory reason for the decision

24   to lay her off, and plaintiff provides no substantial evidence that this explanation is pretextual,

25   and no evidence that her sexual orientation played any role in any decision made with regard

26   to her. The claim that Burmeister attempted to "capitalize on the unfortunate reality of

27   homophobia" is completely speculative and without support. There is no evidence that, as of

28   the time of the security meeting, plaintiff had made any allegations that might subject

42

United States District Court

For the Northern District of California

1   Burmeister to scrutiny.  Nor does plaintiff provide any evidence that Parker or Hull are

2   homophobic, or that Burmeister's alleged attempt to turn Parker and Hull against plaintiff was

3   successful.  Indeed, the evidence shows that plaintiff was suspended with full pay while the

4   investigation as on-going, and that she was allowed to return to work with no discipline after

5   the investigation.

6        The comments about lesbians were casual, stray comments made outside the

7   employment environment over a period of years by a person with whom plaintiff was

8   supposedly friends.  Plaintiff admitted that the comments about lesbians camping, going to

9   dance clubs or political rallies, using canes, or being poor or hostile were sprinkled through

10  the many years of her friendship with Burmeister – amounting, according to plaintiff's

11  deposition testimony, to maybe two or three comments a year – during which time she and

12  Burmeister frequently discussed their social lives, their families, their sexual orientation, and

13  during which time Burmeister twice personally hired plaintiff and once recommended her for a

14  position (at Apple) and advocated for a relatively high salary for her.

15       Further, the fact that Burmeister made the decision to lay her off establishes a strong

16  inference of non-discrimination as a matter of law.  Where the same person both hires and

17  fires within a relatively short period of time, a strong inference arises that there was no

18  discriminatory motive.  Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 270 (9th Cir. 1996);

19  Horn v. Cushman & Wakefield Western, Inc., 72 Cal. App. 4th 798, 809 (1999).   Although, in

20  this case, plaintiff was hired to work at Apple by Kaufman, not by Burmeister, it is undisputed

21  that Burmeister recommended her for the job at Apple, and that he had previously hired

22  plaintiff to work under him for two other employers.

23       The Ninth Circuit recently held, in Coghlan, that the burden of presenting "specific and

24  substantial" evidence of intentional discrimination is "especially steep" in cases where the

25  "same actor" inference applies.  Coghlan, 413 F.3d at 1095.  The "same actor" inference is

26  "neither a mandatory presumption . . . nor a mere possible conclusion for the jury to draw."  Id.

27  at 1098.  Rather, it is a "strong inference," and a plaintiff seeking to defeat this inference is

28  required to make out a strong case of bias.  Id.  Here, plaintiff provides no direct evidence and

United States District Court

For the Northern District of California

1   only weak and insubstantial circumstantial evidence.

2           9.     <u>Genetic characteristic discrimination</u>

3        In the fourteenth cause of action, plaintiff alleges genetic characteristic discrimination

4   (FEHA) against Apple.  Specifically, she alleges that Apple "engaged in a continuing pattern

5   and practice of unlawful genetic characteristic discrimination . . . in connection with plaintiff's

6   work assignments, promotion and the terms and conditions of plaintiff's employment, by failing

7   to promote and raise the rate of compensation of plaintiff when plaintiff applied for and was

8   otherwise qualified for a job position and by basing the decision to discipline plaintiff on her

9   sexual orientation."

10       Apple argues that plaintiff failed to exhaust her administrative remedies with regard to

11  the claim of failure to promote or the claim that she was unlawfully suspended.  Her amended

12  DFEH charge, where she for the first time asserted claims of discrimination based on sexual

13  orientation and genetic characteristic, identifies the adverse action only as "laid off."  Failure

14  to exhaust is a jurisdictional defect, <u>see</u> <u>Martin</u>, 29 Cal. App. 4th at 1724, and Apple argues

15  that summary judgment should be granted for this reason.

16       Apple also contends that plaintiff cannot prevail on this claim because she does not

17  meet the statutory definition of "genetic characteristic."  FEHA prohibits discrimination against

18  individuals who have a " physical disability, mental disability, or medical condition."  Cal. Gov't

19  Code § 12920.  "Medical condition" means either a) cancer or related health impairments, or

20  b) "genetic characteristics," which is defined as

21       [a]ny scientifically or medically identifiable gene or chromosome, or combination
         or alteration thereof, that is known to be a cause of a disease or disorder in a
22       person or his or her offspring, or that is determined to be associated with a
         statistically increased risk of development of a disease or disorder, and that is
23       presently not associated with any symptoms of any disease or disorder

24  or

25       [i]nherited characteristics that may derive from the individual or family member,
         that are known to be a cause of a disease or disorder in a person or his or her
26       offspring, or that are determined to be associated with a statistically increased
         risk of development of a disease or disorder, and that are presently not
27       associated with any symptoms of any disease or disorder.

28  Cal. Gov't Code § 12926(h)(2).

United States District Court

For the Northern District of California

1    Apple argues that under this definition, plaintiff can prevail on this claim only if she

2  shows that her obesity results from a physiological condition affecting one or more bodily

3  symptoms.  In Cassista v. Community Foods, Inc., 5 Cal. 4th 1050, 1065 (1993), the California

4  Supreme Court held that an individual who asserts a FEHA claim on the basis of his or her

5  weight must adduce evidence of a physiological, systemic basis for the condition.  Apple

6  contends that plaintiff, who testified in her deposition that she has never undergone any

7  genetic or medical testing, cannot establish that her weight was caused by a physiological

8  condition affecting one or more bodily symptoms, or that she has any other "scientifically or

9  medically identifiable gene or chromosomes."

10    Moreover, under the FEHA definition, the genetic characteristic must not be "presently

11  associated with any symptoms of any disease or disorder."  Apple notes that plaintiff claimed

12  in her deposition that she had suffered multiple disorders because of her weight while she

13  was employed at Apple – high blood pressure, high cholesterol, gallbladder surgery as a

14  result of weight loss, removal of additional gallstone related to the gallbladder surgery.  She

15  even claimed that doctors were advising her that she would "die" if she didn't lose weight.

16    Finally, Apple argues that even if plaintiff had pled that her lay-off was based on her

17  weight, such a claim would fail because she has no evidence that her weight contributed to her

18  lay-off.  She admitted that she was obese during the entire period that she knew Burmeister –

19  during which time he hired her into two jobs, and recommended her for a job at Apple and was

20  influential in getting her hired.  Thus, Apple asserts, there is a strong inference of non-

21  discrimination as a matter of law (the "same actor" inference).

22    In opposition, plaintiff claims she is "at a loss as to why defendants have alleged that

23  she failed to exhaust her administrative remedies," as she filed a DFEH charge alleging

24  discrimination on the basis of genetic characteristics in December 2004 (actually November

25  2004).

26    Plaintiff also claims that she has established the elements of her claim. With regard to

27  Apple's argument that her weight does not meet the definition of a "genetic characteristic,"

28  she asserts that the opinion in Cassista is distinguishable because the plaintiff there had sued

45

United States District Court

For the Northern District of California

for disability discrimination, not genetic characteristic discrimination.  She also claims that the fact that she has not undergone genetic testing does not mean that there is not a genetic basis for her obesity.  She claims to have offered evidence that her obesity is caused by genetics – pointing to her deposition testimony that several family members are clinically obese, and that African-American women suffer disproportionately from obesity-related disease such as stroke and heart disease.  She claims that genetic testing would be expensive, and there would be no benefit to her of incurring this expense, as there is no gene therapy for obesity.

She asserts that Burmeister has shown evidence of animus toward obese people – specifically, that he told her on a number of occasions that her chances of promotion at Apple would be better if she lost weight.  She adds that despite Apple's evidence that Walker and plaintiff's brother Byron Patterson were obese at one time, this does not mean that no one at Apple discriminated against plaintiff because of her weight.  She speculates (without any support) that it is "one of life's hard realities" that physical imperfections are less tolerated in women than in men – suggesting that people at Apple would view Walker's obesity as tolerable, while at the same time discriminating against her because of her weight.

Finally, she argues that the "same actor" inference does not apply because it is a presumption that can be rebutted.  She notes that it was Kaufman who hired her, not Burmeister.  She claims that the fact that Burmeister knew of plaintiff's obesity before she was hired is not dispositive, as she asserts that her weight fluctuated during the years that she and Burmeister were acquainted.  She also claims that she had gastric-bypass surgery while she was at Apple, and in fact weighed considerably less when she was terminated than when she was hired, but that Burmeister knew she was having problems with the post-surgery diet, and therefore "had no reason to believe" she would keep her weight down.

The court finds that the motion must be GRANTED.  Plaintiff did not exhaust her administrative remedies with regard to the claim of failure to promote or the claim that she was unlawfully suspended.  The administrative charge was premised only on her termination, and she never alleged in the 5thAC that she was terminated based on a genetic characteristic.

United States District Court

For the Northern District of California

1    Moreover, her obesity does not meet the statutory definition of "genetic characteristic"

2  – specifically, that the genetic characteristic not presently be associated with the symptoms of

3  any disease or disorder.  Even if plaintiff had provided proof that her excess weight was

4  caused by some "scientifically or medically identifiable gene or chromosome," she has

5  admitted that her obesity was "associated with . . . symptoms of . . . disease or disorder" –

6  specifically, that she suffered from high blood pressure, and high cholesterol, and that she was

7  required to undergo gallbladder surgery as a result of weight loss, and removal of additional

8  gallstone related to the gallbladder surgery.

9    Finally, the "same actor" inference requires that plaintiff provide specific and

10  substantial evidence of pretext.  The only evidence she provides are the statements allegedly

11  made by Burmeister, to the effect that she would go farther at Apple if she lost weight.  These

12  comments are little more than stray remarks about other decisionmakers.  Plaintiff provides

13  no evidence that Burmeister ever told her plaintiff that his own decisions about her would be

14  different if she were to lose weight.  Plaintiff even admitted at her deposition that Burmeister

15  indicated to her that her weight "wasn't a factor in his mind, but it was a factor in others'

16  minds."  Standing alone, Burmeister's comments are not sufficient to overcome the strong

17  inference of non-discrimination created by the fact that Burmeister twice hired plaintiff and

18  gave her a strong recommendation when she applied at Apple.

19    10.    Punitive damages

20    Defendants argue that the summary judgment should be granted as to the prayer for

21  punitive damages because plaintiff has not provided evidence of oppression, fraud, or malice.

22  The court finds that the motion must be GRANTED, as the court has found that summary

23  judgment appropriate as to all the causes of action in the 5thAC.

**MOTION FOR SANCTIONS**

25  A.    Legal Standard

26    Rule 11 sanctions may appropriately be imposed on the signer of a paper "if either (a)

27  the paper is filed for an improper purpose, or (b) the paper is 'frivolous.'"  Townsend v.

28  Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir.1991) (en banc).  A paper is

**United States District Court**
For the Northern District of California

1   "frivolous" if it is "both baseless and made without a reasonable and competent inquiry."  Id.;

2   Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir. 1997).  An assertion is baseless where it

3   completely lacks a factual foundation, see Montrose Chem. Corp. of Calif. v. American

4   Motorists Ins. Co., 117 F.3d 1128, 1133 (9th Cir.1997), and a competent attorney could not

5   form a reasonable belief that it is warranted by existing law or a good faith argument for

6   extension, modification or reversal of existing law.  See Fed. R. Civ. P. 11(b)(2); Golden

7   Eagle Distributing Corp. v. Burroughs Corp., 801 F.2d 1531, 1538 (9th Cir.1986).  Both the

8   "baseless" and "reasonable inquiry" determinations are governed by an objective standard of

9   "reasonableness under the circumstances."  In re Keegan Mgmt Co., Sec. Litig., 78 F.3d 431,

10  434 (9th Cir.1995) (confirming approach in Townsend).

11  B.      Motion for Sanctions

12          Apple and Walker move for sanctions under Federal Rule of Civil Procedure 11,

13  arguing that the original complaint as well as all the amended complaints were presented to

14  the court for an improper purpose, that the claims and legal contentions related to Walker in

15  those complaints are unwarranted by existing law, and that the allegations against Walker lack

16  factual support.  They seek fees and costs incurred in the defense of the claims asserted

17  against Walker – which they estimate at $24,000 to date.  Plaintiff opposes the motion, and

18  also moves for sanctions pursuant to Federal Rule of Civil Procedure 37, requesting $3,120.

19          Plaintiff alleged five claims against Walker – racial harassment (FEHA), retaliation

20  (FEHA), slander, libel, and invasion of privacy.  Defendants assert that it was clear from

21  plaintiff's deposition that all these claims lacked any factual foundation from the time they were

22  asserted, but that plaintiff nonetheless included the allegations against Walker each time she

23  amended her complaint.

24          On December 9, 2004, after completing the first three days of plaintiff's deposition,

25  defense counsel sent Patterson and her counsel a letter addressing the lack of factual support

26  and legal viability of her claims against Walker.  Defense counsel urged plaintiff's counsel to

27  dismiss the claims against Walker.  In response, plaintiff filed a third amended complaint in

28  which she added a claim of retaliation against Walker personally.  After defense counsel

United States District Court
For the Northern District of California

1   wrote plaintiff's counsel another letter pointing out the lack of a factual basis for those claims in

2   the third amended complaint, plaintiff filed a fourth amended complaint asserting an additional

3   claim of retaliation against Walker.

4        Plaintiff took the depositions of Burmeister in October 2004, Parker in February 2005,

5   and Walker in March 2005.  All three deponents, and especially Walker, confirmed Walker's

6   lack of involvement in the investigation into plaintiff's access and misuse of confidential Apple

7   personnel records.  Following that deposition, on April 19, 2005, defendants' counsel sent

8   another letter urging plaintiff to drop the claims against Walker.  Plaintiff's response was to file

9   a fifth amended complaint, alleging the same claims against Walker, and containing the same

10  factual allegations that the depositions had shown to be untrue (e.g., that Walker disabled

11  plaintiff's network access, "interrogated" her co-workers about her, and prevented plaintiff

12  from attending her therapy appointment).  According to defendants, plaintiff's counsel never

13  responded to the April 19, 2005, letter.

14       Defendants argue that the undisputed evidence shows that plaintiff had only two or

15  three personal contacts or interactions with Walker, and that those, according to plaintiff's

16  deposition testimony, were brief and pleasant.  Indeed, in one of them, Walker complimented

17  her on a report she had prepared.  Walker had no involvement in hiring plaintiff, in supervising

18  her, or in the investigation into plaintiff's inappropriate misuse of confidential Apple

19  information.  When he received plaintiff's November 12th e-mail stating her view that she

20  should receive a raise and a promotion, Walker asked Sheri Parker, Apple's Director of

21  Employee Relations, to investigate the situation and take appropriate action.  The evidence

22  shows further that Walker did not make the decision to suspend plaintiff – Parker did that –

23  and that he did not make the decision to lay her off during the March 2004 reduction in force –

24  that was Burmeister's job.

25       Defendants argue that all five of the claims asserted against Walker are baseless.

26  First, they assert that the racial harassment claim is without merit because, as disclosed in

27  discovery, Walker was not responsible for any of the acts that plaintiff claimed constituted

28  harassment (creating a new policy for the Compensation Department regarding work hours,

United States District Court

For the Northern District of California

interrogating plaintiff's co-workers about her, preventing plaintiff from attending therapy appointments, disabling plaintiff's network and building access during her suspension, and removing plaintiff's name from her door).  Moreover, defendants contend that the alleged harassing conduct all constituted "personnel management activity," which was related to a legitimate investigation of plaintiff's misuse of confidential employee information, and which cannot constitute harassment as a matter of law.  In addition, they assert that plaintiff has no evidence of racial animus on the part of Walker, and that the conduct was not "severe" or "pervasive."

Second, defendants argue that the retaliation claim lacks a factual or a legal foundation.  The retaliation claim alleges all the same conduct as the harassment claim, and defendants assert that discovery showed it was plainly without merit for the same reasons.  Defendants also contend that this claim is without merit because plaintiff cannot show she was subjected to an adverse action.

Third, defendants argue that the two defamation claims lack both a factual and a legal basis.  In the cause of action for defamation, plaintiff alleges that Walker made statements implying that she accessed her co-workers' records, and accused plaintiff of accessing her co-workers' compensation information in a writing transmitted to the independent investigator and Burmeister.  Defendants assert that the depositions showed that Walker was not involved in the investigation of plaintiff's violation of Apple's confidential information policies, and that there was never any evidence that Walker communicated anything about plaintiff in writing to Speer or to anyone else.  Finally, defendants contend that these claims lack a factual and legal basis, because plaintiff admitted that she did access her co-workers' private compensation information for her own use, and the alleged defamatory statements were therefore non-actionable because they were true.

Fourth, defendants contend that the privacy claim against Walker lacks a factual and legal basis.  The basis of the claim against Walker was the assertion that he looked at the contents of her personal laptop – which she used to perform Apple work – while investigating her misuse of confidential information.  Defendants note that plaintiff testified in her deposition

United States District Court

For the Northern District of California

1    that she was unaware that anyone other than Parker and Weiss (the technician) had reviewed

2    any material on her laptop, let alone personal information.  Moreover, defendants assert that

3    Walker's deposition confirmed that he was not involved in the investigation, and that he had

4    asked Parker to handle it.  Defendants argue in addition that there is no legal basis for the

5    privacy claim because Apple's written policies make it clear that Apple has the right to inspect

6    computers and that the employees have no expectation of privacy in the contents of their

7    computers.

8         In opposition, plaintiff argues that the motion is frivolous, claiming that she did not do

9    anything prohibited by Rule 11, and asserting that she has provided sufficient evidence to

10   support every cause of action alleged in this lawsuit.  She contends that after Walker received

11   her complaint that she was being treated differently in the workplace than her non-Black

12   counterparts (referring to the November 12th e-mail), she was suspended, forced to turn over

13   her personal computer, harassed, kept idle with no work when she returned from the

14   suspension, and then wrongfully terminated.

15        Plaintiff claims that she had a reasonable basis for believing that Walker was involved

16   in the acts at issue in the lawsuit.  For example, she asserts that Burmeister told her that while

17   he had made the recommendations regarding the merit increases, Walker had done the

18   evaluations and determined the merit increases himself.  She claims she was "in no position

19   to dismiss Dan Walker with nothing more than the self-serving statements of the defendant

20   upon which to base her decision."  She also asserts that it is for the trier of fact to weigh the

21   credibility of the witnesses, where their statements are in conflict with each other.

22        Plaintiff maintains that each of her claims against Walker are warranted by existing law.

23   First, she contends that the harassment claim is valid because Burmeister testified that he

24   gave Burmeister free rein, and the evidence shows that Burmeister made a number of

25   derogatory comments about African-Americans.

26        Second, she asserts that the retaliation claim against Walker has merit because she

27   has established all the elements of the claim.  She submits that even though she testified that

28   the November 12th e-mail was not a complaint of racial discrimination, the fact was that it

United States District Court

For the Northern District of California

1   specifically identified a number of non-African-American employees in the Compensation

2   Group who were paid less than plaintiff was.  Thus, plaintiff asserts, she engaged in protected

3   activity.  She also claims that she suffered adverse action, in that her work load was reduced

4   after she returned from the suspension, and because she was terminated.  She asserts further

5   that there is a triable issue as to pretext, claiming that the "timing" of the adverse actions is

6   suspect.  Specifically, she notes that immediately after she wrote an e-mail to Walker

7   requesting that he end the discriminatory conduct of Apple with regard to salaries, she was

8   suspended for one month, her laptop was confiscated, and then she was terminated.

9        Third, plaintiff claims the defamation claims have merit, because she can show that

10   Burmeister made statements about her that were false and non-privileged, and which he did

11   not believe were true.

12        Fourth, she contends that the privacy claim is valid.  She argues that Apple's policy

13   regarding inspection of computers applies to Apple computers, not to personal computers.

14   She also contends that Burmeister's act of removing personal papers from the table in her

15   office, and then copying them at Parker's request, satisfies the elements of invasion of

16   privacy.

17        Finally, she argues that she is entitled to sanctions under Rule 37 for her counsel's time

18   in "responding to this baseless motion."

19        The court finds that the motion must be GRANTED.  Plaintiff has provided no facts to

20   support the racial harassment claim against Walker, failed to state any factual or legal basis

21   for the retaliation claim or the defamation claim against Walker, and stated no facts showing

22   that her invasion of privacy claim was well-grounded in fact or law.  On more than one

23   occasion, defendants put plaintiff on notice that her claims against Walker were frivolous, but

24   plaintiff persisted.

25        Plaintiff has misstated the standard for Rule 11.  Defendants do not base the motion

26   solely on Walker's testimony, but on the facts that, for example, plaintiff herself could not testify

27   to any harassment by Walker, that none of the statements in the defamation claim had

28   anything to do with Walker, and that plaintiff testified that she had no knowledge that Walker or

52

**United States District Court**

For the Northern District of California

1   anyone other than Parker and Weiss looked at the contents of her laptop.  It is not necessary

2   that defendants establish bad faith on plaintiff's part, as Rule 11 sanctions do not depend on a

3   finding of bad faith or malicious motive.  Rather, the test is an objective one – "if the paper

4   filed is . . . frivolous, legally unreasonable or without factual foundation even though . . . not filed

5   in subjective bad faith."  Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 (9th Cir. 1986).

6   Rule 11 sanctions are plainly warranted where claims against any defendant are frivolous,

7   even though a plaintiff may have stated a non-frivolous claim against another.  Townsend, 914

8   F.2d at 1141-44.

9        Rule 11 also applies to plaintiff's continued advocacy of the claims against Walker by

10  filing multiple amended complaints alleging retaliation without any basis in law or fact, refusing

11  to withdraw her claims against Walker, responding to interrogatories stating that Walker had

12  acted deliberately and without regard to the high probability of economic harm to plaintiff, and

13  opposing the motion for sanctions and attempting to mislead the court by misrepresenting

14  Walker's deposition testimony.

15       The court awards defendants $5,000 in sanctions against plaintiff and her counsel, the

16  Law Offices of Waukeen Q. McCoy.  The "central purpose of Rule 11 is to deter baseless

17  filings in District Court and thus . . . streamline the administration and procedure of the federal

18  courts . . . . Although the rule must be read in light of concerns that it will spawn satellite

19  litigation and chill vigorous advocacy . . . any interpretation must give effect to the Rule's

20  central goal of deterrence."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990).  The

21  court finds that an award of sanctions in the amount of $5,000 is sufficient to serve the goal of

22  deterrence, as articulated by the Supreme Court.

23  / / /

24  / / /

25  / / /

26

27

28

1        Plaintiff's request for Rule 37 sanctions is DENIED.[11]

2        Defendants' motion to strike all late-filed papers is GRANTED, as stated at the

3   hearing.

4

5   **IT IS SO ORDERED.**

6   Dated:  September 19, 2005

7   _____
    PHYLLIS J. HAMILTON
8   United States District Judge

United States District Court

For the Northern District of California

---

28
    [11]  It is not clear why plaintiff moved for sanctions pursuant to Rule 37.  Sanctions may be awarded under Rule 37, upon motion, for failure to comply with a discovery order.